TOWN OF NEENAH SANITARY DISTRICT No. 2, a Wisconsin Sanitary District, Plaintiff-Appellant,

v.

CITY OF NEENAH, a Wisconsin Municipal Corporation, Defendant-Respondent.

Court of Appeals

No. 01–2520. *Submitted on briefs April 12, 2002.—Decided May 15, 2002.*

2002 WI App 155

(Also reported in 647 N.W.2d 913.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *John A. St. Peter* of *Edgarton, St. Peter, Petak, Massey & Bulton,* of Fond du Lac.

On behalf of the defendant-respondent, the cause was submitted on the brief of *John E. Thiel, Esq.* of *Godfrey & Kahn, S.C.* of Appleton.

Before Nettesheim, P.J., Anderson and Snyder, JJ.

¶ 1. NETTESHEIM, P.J. The Town of Neenah Sanitary District No. 2 (the District) appeals from a summary judgment in favor of the City of Neenah. The District filed this action after the City refused to consent to the District's request to extend sewer service without stating objective reasons for doing so. Based on the clear and unambiguous language of the parties' written agreements regarding wastewater treatment,

the circuit court held that the City was not required to state objective reasons for withholding consent. The court further determined that the City's actions did not violate Wisconsin's antitrust provision, WIS. STAT. § 133.03 (1999–2000).[1] We affirm both rulings.

## Background

¶ 2.   The District and the City are parties to a Wastewater Treatment Service Contract dated September 28, 1982. Both the District and the City receive sanitary treatment services from the regional treatment plant and regional interceptor system created pursuant to the 1982 contract. The treatment plant is owned and operated by the Neenah-Menasha Sewerage Commission. The commission received a federal construction grant award of $18,222,878 in September 1984. The Federal Construction Grant Program required intermunicipal agreements for the construction and operation of a proposed treatment works serving two or more municipalities. The program additionally prohibited a central city from requiring annexation as a prerequisite for sewer service.

¶ 3.   Following the 1982 Agreement, the District sued the City for access to the City's interceptor. On June 16, 1988, the parties entered into an agreement settling all issues between them. Under the agreement, the commission allocated to the District certain interceptor capacity in, or access to, the City's interceptors that connect the District to the Neenah-Menasha sewer

---

[1] We note that all statutory references are to the 1999–2000 version unless otherwise indicated.

plant. The District paid the City $295,000 for the capacity or access[2] in the interceptor.

¶ 4. On July 3, 1998, the District requested permission from the City to access the City's interceptor for future expansion of sewer territory within the City's boundaries. The District proposed to extend sewer service to a business and several individual property owners. The proposed sewer extension is known as the "Muttart Road Extension." The commission reviewed and approved the District's request subject to the City's approval of the use of its collection system for transportation purposes.[3] The area that will be served by the proposed Muttart Road Extension is within the boundaries of the District and of the East Central Wisconsin Regional Planning Commission Sewer Service Area. On July 24, 1998, the City refused to consent to the proposed Extension.

¶ 5. In response, the District filed this action against the City, alleging breaches of the 1982 and 1988 agreements and a violation of WIS. STAT. § 133.03, Wisconsin's antitrust statute. The City moved for summary judgment. The circuit court granted the motion, ruling that the 1982 and 1988 agreements unambiguously permitted the City to withhold its consent to sewer extension for any reason. The court additionally found that pursuant to *Town of Hallie v. City of Chippewa Falls*, 105 Wis. 2d 533, 314 N.W.2d 321 (1982), the City's actions did not violate the antitrust provisions of § 133.03. The District appeals.

---

[2] We note that the parties dispute whether the agreement granted the District capacity or access in the City's interceptors. Although the circuit court found that the agreement granted access to the District, we need not resolve this factual dispute on appeal as it is not germane to the outcome.

[3] The commission is not a party to this action.

## Discussion

¶ 6. The District contends that the circuit court erred in granting summary judgment dismissing its breach of contract and antitrust claims. As to the contract claim, the District argues that the parties' agreements instruct that the City may withhold its consent to sewer extension only for objective engineering, financial or regulatory reasons. As to the antitrust claim, the District argues that *Town of Hallie* does not govern this case because the facts here are different.[4]

¶ 7. We review a circuit court's grant of summary judgment de novo. *Weigel v. Grimmett*, 173 Wis. 2d 263, 267, 496 N.W.2d 206 (Ct. App. 1992). Pursuant to WIS. STAT. § 802.08(2), summary judgment must be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The inferences to be drawn from the underlying facts contained in the moving party's material should be viewed in the light most favorable to the party opposing the motion, and doubts as to the existence of a genuine issue of material fact are resolved against the moving party. *L.L.N. v. Clauder*, 209 Wis. 2d 674, 684, 563 N.W.2d 434 (1997).

---

[4] The District additionally argues that the City failed to establish its additional defense based on claim or issue preclusion. Although the District asserted this defense in the circuit court, the circuit court did not grant summary judgment on this basis. Nor does the City renew this issue on appeal. Therefore, the issue is not before us.

¶ 8.   The District first argues that the City breached the terms of the 1982 and 1988 contracts by withholding consent for the sewer extension without stating an objective reason for doing so. The City contends that the unambiguous language of the contracts, which was the result of significant negotiations between the parties, permits the City to withhold its consent for any reason without having to state any objective reasons for doing so.

¶ 9.   The interpretation of a written contract, including the determination of whether its terms are ambiguous, is a legal matter that we decide independently. *Borchardt v. Wilk*, 156 Wis. 2d 420, 427, 456 N.W.2d 653 (Ct. App. 1990). The law in Wisconsin is that unambiguous contractual language must be enforced as it is written. *Dykstra v. Arthur G. McKee & Co.*, 92 Wis. 2d 17, 38, 284 N.W.2d 692 (Ct. App. 1979), *aff'd*, 100 Wis. 2d 120, 301 N.W.2d 201 (1981). Contractual language is ambiguous only when it is "reasonably or fairly susceptible of more than one construction." *Borchardt*, 156 Wis. 2d at 427.

¶ 10.   We begin with the 1982 Wastewater Treatment Service Contract which includes the following provision in Article IV, Section 401:

> [I]n no event shall the Wastewater delivered into the Regional System by a Contracting Municipality be delivered into the Regional System through the Local Sewer System of any other Contracting Municipality without the written consent of the Commission and such other Contracting Municipality.

Under this language, the consent of the City is clearly

required before the District may deliver wastewater from the Muttart Road Extension into the City's sewer system.

¶ 11.  However, the District argues that other provisions of the 1982 contract limit the City's authority to withhold consent under this section. The District cites to Section 402 of the contract which provides:  "Notwithstanding the provisions of Section 401 of this Article, no Contracting Municipality shall be permitted or required to deliver and discharge into the Regional System [w]astewater which the commission by rule or regulation exempts and/or prohibits from delivery and discharge into the Regional System." This provision assures that a contracting municipality may not deliver or discharge wastewater into the system where the commission has directed otherwise. The provision further explains that the municipality's authority to withhold consent under Section 401 does not override the commission's authority to exempt or prohibit delivery or discharge of wastewater.

¶ 12.  Section 402 has no application under the facts of this case. The City did not propose to deliver or discharge wastewater into the system contrary to any rule, regulation or other action by the commission. To the contrary, by withholding its consent, the City has barred the introduction of wastewater into the system. Moreover, the commission's approval of the District's request to connect to the Muttart Road Extension was given subject to the City's approval of the proposal. The City's refusal to consent to the project does not pit it against any action by the commission.

¶ 13.  For the same reasons, we reject the District's reliance on Section 403, which governs the commission's right to refuse to accept any wastewater if it is of such type or characteristics as to be deleterious

303

to the operation and maintenance of the regional system. The City's right to withhold consent has nothing to do with this separate authority of the commission to refuse to accept wastewater into the system.[5]

¶ 14.   The District additionally argues that a number of provisions in the 1982 contract emphasize the "spirit of regional cooperation for the provision of sanitary services." The District then cites to *Save Elkhart Lake, Inc. v. Village of Elkhart Lake*, 181 Wis. 2d 778, 787, 512 N.W.2d 202 (Ct. App. 1993), for the proposition that every contract carries an implied condition or covenant of good faith and fair dealing in the performance of its terms. We have no quarrel with the facts and the law cited by the District. But there is nothing in the summary judgment record that supports a claim or inference that the City's withholding of consent was grounded in bad faith. The District would have us hold that because the City did not offer objective reasons for withholding its consent, a material issue of fact exists as to the City's good faith. Recognizing that we must view the summary judgment evidence in a light most favorable to the District, we nonetheless conclude that the District's inference of bad faith (or a material issue of fact on that question) by the City is too much of a stretch.

---

[5] The District additionally cites to Section 604 of the 1982 agreement which prohibits a contracting municipality from making or permitting any new connection to or extension of its local sewer system which is designed or permits entrance of inflow into the regional system without first submitting plans to the commission and to a provision requiring payment for the use of the local sewer system. We summarily reject these additional arguments. These provisions do not conflict with the City's authority under Section 401 to withhold consent.

¶ 15.  Again, there is nothing in the terms of the agreement that requires the City to provide the consent sought by the District. The agreement unambiguously provides that such consent is required before the District may provide service to an additional territory through the City's sewer system. Here, the District requested consent and the City refused to grant it. We decline to rewrite the parties' agreement to provide something that the District failed to include.

██

¶ 16.  Next we turn to the 1988 contract which is similarly unambiguous. The 1988 contract provides at ¶ 12, addressing sewer service for annexed areas and detachment:

> This paragraph shall not prohibit the DISTRICT from increasing its size or boundaries pursuant to [Wis. Stat. §§ 60.785 and 60.71]. The parties specifically agree that in the event the DISTRICT adds territory, *the DISTRICT shall not be allowed to serve added territory through the CITY interceptor without specific authorization from the CITY.* "Added territory" is defined to mean territory not in the DISTRICT at this time as shown on Exhibit "1" (the map). The CITY has no objection to an alteration of the legal boundaries of the DISTRICT to conform to the DISTRICT as shown on Exhibit "1" (the map). (Emphasis added.)

The Muttart Road Extension area is "added territory" as it is not within the territory shown on Exhibit "1" of the 1988 agreement. The agreement clearly requires specific authorization from the City before the District may serve added territory through the City interceptor.

¶ 17.  Relying on affidavits and statements made after the fact and for purposes of litigation by those who negotiated the agreement, the District argues that the "veto" power given to the City in the 1988 agreement

was in response to the District's attempt during the negotiations to have "unlimited access" to the City's interceptor.[6] Therefore, the District reasons that the City may withhold its consent only where the District seeks such "unlimited access." Since the Muttart Road Extension will not exceed the purchased capacity in the interceptor, the District concludes that the City was not entitled to withhold its consent.

¶ 18. But here again, the plain and unambiguous language of the 1988 agreement dooms the District's argument. While the object of contract construction is to determine the contracting parties' intent, we begin by looking to the language the parties used to express their agreement. *Bank of Barron v. Gieseke*, 169 Wis. 2d 437, 455, 485 N.W.2d 426 (Ct. App. 1992). When the contract's language is plain and unambiguous, we construe it as it stands. *Id.* Here, the contract language is unambiguous. The substance of the negotiations underlying the contract is not persuasive as the express terms of the contract are unambiguous.

*The Antitrust Law, WIS. STAT. § 133.03*

¶ 19. The District contends that the circuit court erred in its determination that the City's decision to withhold consent did not violate WIS. STAT. § 133.03. The District argues that the City's action illegally "tied in" wastewater collection and transportation services with other municipal services in violation of the antitrust provisions of § 133.03. The City argues that the supreme court's ruling in *Town of Hallie* controls the

---

[6] The District cites to a letter from the City's attorney in support of this argument.

issue and authorized the City's actions. The District disagrees, noting the different facts of *Town of Hallie*.

¶ 20. The Wisconsin Antitrust Law, modeled after the federal Sherman Act, 15 U.S.C. § 1 et seq., provides in relevant part:

> **133.03 Unlawful contracts; conspiracies. (1)** Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce is illegal. Every person who makes any contract or engages in any combination or conspiracy in restraint of trade or commerce may be fined not more than $100,000 if a corporation, or, if any other person, may be fined not more than $50,000 or imprisoned for not more than 7 years and 6 months or both.

Pursuant to Wis. Stat. § 133.02(3), the City is a "person" for purposes of § 133.03(1).

¶ 21. In *Town of Hallie*, the Town of Hallie proposed to construct its own sewage collection system and connect it to the City of Chippewa Falls' treatment system. The city rejected the proposal and instead offered to allow the town to use its treatment facility if the town agreed to allow the city to provide for the collection of sewage and other municipal services. *Town of Hallie*, 105 Wis. 2d at 534. The town then sued the city, claiming, as does the District in this case, that the city's refusal was an "anti-competitive tie-in," thereby preventing it from being able to compete with the city as a potential competitor in the market for sewage collection services. *Id.* at 535–36.

¶ 22. In determining whether the city's actions were illegal under Wis. Stat. § 133.03, the supreme court held that "the test as to the applicability of the state antitrust law is whether the legislature intended to allow municipalities to undertake such actions." *Town of Hallie*, 105 Wis. 2d at 539. After an analysis of

■■■■■■■■■■■■■■■■■■■

the home rule powers of cities, the type of conduct undertaken by the city, and the general statutory framework set up by the legislature, the supreme court concluded that "the legislature intended to allow a city to tie the provision of sewage services to an area outside the city to the acceptance by the area's inhabitants of the city's other services." *Id.*

¶ 23. The supreme court noted that the cities are granted broad home rule powers by the state constitution and also by WIS. STAT. § 62.11(5). *Town of Hallie*, 105 Wis. 2d at 539. That statute provides:

> **(5)** POWERS. Except as elsewhere in the statutes specifically provided, the council shall have the management and control of the city property, finances, highways, navigable waters, and the public service, and shall have power to act for the government and good order of the city, for its commercial benefit, and for the health, safety, and welfare of the public, and may carry out its powers by license, regulation, suppression, borrowing of money, tax levy, appropriation, fine, imprisonment, confiscation, and other necessary or convenient means. The powers hereby conferred shall be in addition to all other grants, and shall be limited only by express language.

Sec. 62.11(5). The court cautioned that cities may not ignore the state antitrust law in all cases merely by relying on the home rule powers, especially when the home rule powers conflict with matters of state-wide concern. *Town of Hallie*, 105 Wis. 2d at 540. However, after an analysis of the legislative enactments dealing with cities and their powers to provide sewage services, the court concluded that the antitrust laws did not apply to the city's conduct. *Id.*

¶ 24.  The supreme court also looked to both WIS. STAT. §§ 66.069(2)(c) and 144.07(1m) (1979–80).[7] *Town of Hallie*, 105 Wis. 2d at 541. The court observed that pursuant to § 66.069(2)(c) (1979–80), the legislature provided that a city may fix the area outside its boundaries in which service will be provided and has no obligation to serve beyond that area. *See Town of Hallie*, 105 Wis. 2d at 541. The court further noted that § 144.07(1m) (1979–80) similarly supported a city's right to annexation; that statute provided that in certain cases the department of natural resources (DNR) may order a city to connect its sewer service to an adjoining unincorporated area, but the city may then commence a proceeding to annex the area to which it is required to provide service. *See Town of Hallie*, 105 Wis. 2d at 541. If the inhabitants of that area rejected the annexation by referendum, then the DNR order is void and the city is not required to provide sewer service to the area. *Id.*

---

[7] Both of these statutory sections have since been renumbered. WISCONSIN STAT. § 66.069(2)(c) (1979–80) was renumbered to WIS. STAT. § 66.0813(3)(a) (1999–2000) by 1999 Wis. Act 150, §§ 189, 240. The language of the statute has remained substantially the same as that considered by the court in *Town of Hallie v. City of Chippewa Falls*, 105 Wis. 2d 533, 314 N.W.2d 321 (1982). It provides:

> Notwithstanding s. 196.58(5), a city, village or town may by ordinance fix the limits of utility service in incorporated areas. The ordinance shall delineate the area within which service will be provided and the municipal utility has no obligation to serve beyond the delineated area. The delineated area may be enlarged by a subsequent ordinance. No ordinance under this paragraph is effective to limit any obligation to serve that existed at the time that the ordinance was adopted.

Sec. 66.0813(3)(a).

¶ 25.  Guided by these statutes, the supreme court reasoned:

> [T]he legislature seems to view annexation as an appropriate prerequisite to the provision of sewage service outside the limits of a city. This seems reasonable because establishing and maintaining sewage treatment facilities can be a very substantial financial burden upon the city taxpayers and residents. If an area is to have the benefit of such services, it may be appropriate for it to be annexed in order to add to the city's tax base and help pay for the cost of providing such services.
>
> The city, in providing sewage services, is performing a governmental rather than a proprietary service. Its primary objective is to help ensure health and

WISCONSIN STAT. § 144.07(1m) (1979–80) was renumbered to WIS. STAT. § 281.43(1m) (1999–2000) by 1995 Wis. Act 227 § 408. Again, the language of the statute is substantively the same as that considered by the court in *Town of Hallie*. It provides:

> **(1m)** An order by the department for the connection of unincorporated territory to a city or village system or plant under this section shall not become effective for 30 days following issuance. Within 30 days following issuance of the order, the governing body of a city or village subject to an order under this section may commence an annexation proceeding under s. 66.0219 to annex the unincorporated territory subject to the order. If the result of the referendum under s. 66.0219(4) is in favor of annexation, the territory shall be annexed to the city or village for all purposes, and sewerage service shall be extended to the territory subject to the order. If an application for an annexation referendum is denied under s. 66.029(2) or the referendum under s. 66.0219(4) is against the annexation, the order shall be void. If an annexation proceeding is not commenced within the 30-day period, the order shall become effective.

Sec. 281.43(1m).

sanitation for its residents. This service resembles other governmental services such as police and fire protection which are monopolies for the public good. There is no profit motive involved and a monopoly exercised by the city is more appropriate than competition in the furnishing of such public services, even though, as here, the service can be extended beyond the geographical boundaries of the city.

*Id.* at 542.

¶ 26. The District acknowledges the holding in *Town of Hallie* but contends it does not apply to the circumstances of this case. Specifically, the District argues that *Town of Hallie* is distinguishable because it concerned a city-owned treatment plant rather than a regional facility constructed to serve multiple municipalities. However, the District's argument overlooks that it is seeking permission to transport sewage through interceptors that are owned by the City. Regardless of whether the treatment plant is a regional facility, access to the City's interceptors is necessary and integral to providing the Muttart Road Extension with sewer services. We reject the District's attempt to distinguish *Town of Hallie*.[8]

---

[8] The supreme court's ruling in *Town of Hallie* was later supported by the United States Supreme Court's holding in *Town of Hallie v. City of Eau Claire*, 471 U.S. 34 (1985). In that case, four unincorporated townships located adjacent to the City of Eau Claire sought injunctive relief against the city. *Id.* at 36. The townships claimed that the City violated the Sherman Act by acquiring a monopoly over the provision of sewage treatment services in Eau Claire and Chippewa counties and by tying the provision of such services to the provision of sewage collection and transportation services. *Id.* at 36–37. The Supreme Court rejected the township's arguments holding that the State of Wisconsin "has specifically authorized Wisconsin cities to provide sewage services and has delegated to the cities

¶ 27. We conclude that the supreme court's analysis of the applicable statutes and reasoning in the *Town of Hallie* govern the issue presented in this case. We therefore conclude that the circuit court properly granted summary judgment to the City as there is no genuine issue of material fact as to whether the City's denial of consent violated WIS. STAT. § 133.03.

## Conclusion

¶ 28. We conclude that there is no genuine issue of material fact as to whether the City breached the terms of the parties' 1982 and 1988 written agreements by withholding its consent to the Muttart Road Extension. Based on the unambiguous language of the agreements, it was entitled to do so. We further conclude that there is no genuine issue of material fact as to whether the City's action violated WIS. STAT. § 133.03. *Town of Hallie* authorizes a municipality to deny the extension

the express authority to take action that foreseeably will result in anticompetitive effects." *Id.* at 43. It concluded that "the Wisconsin statutes evidence a 'clearly articulated and affirmatively expressed' state policy to displace competition with regulation in the area of municipal provision of sewage services." *Id.* at 44 (citation omitted).

We note that a later federal case, *Sakamoto v. Duty Free Shoppers, Ltd.*, 764 F.2d 1285, 1288 (9th Cir. 1985), indicates that much of the force of the United States Supreme court cases such as *Town of Hallie v. City of Eau Claire*, which hold that municipalities are not immune from antitrust liability unless acting pursuant to a clearly articulated and affirmatively expressed state policy to displace competition, have been prospectively overruled with the enactmant of the Local Government Antitrust Act of 1984, Pub. L. No. 98–544, 98 Stat. 2750 (1984). The effect of this act on the issues on appeal has not been raised by the parties and is not addressed in this decision.

of sewer service without running afoul of the antitrust law. We therefore affirm the judgment of the circuit court.

*By the Court.*—Judgment and order affirmed.