Sheri KLEIN, Plaintiff-Respondent,

v.

BOARD OF REGENTS OF the UNIVERSITY OF WISCONSIN SYSTEM, Defendant-Appellant.

Court of Appeals

*No. 02–1927. Submitted on briefs February 26, 2003.—Decided May 15, 2003.*

## 2003 WI App 118

(Also reported in 666 N.W.2d 67.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *John R. Sweeney*, assistant attorney general, *James E. Doyle*, attorney general, and *Peggy A. Lautenschlager*, attorney general (supplemental briefs).

On behalf of the plaintiff-respondent, the cause was submitted on the briefs of *Aaron N. Halstead* of *Shneidman, Hawks & Ehlke, S.C.* of Madison.

Before Roggensack, Deininger and Lundsten, JJ.

¶ 1. ROGGENSACK, J. The Board of Regents of the University of Wisconsin System appeals a judgment of the Dane County Circuit Court. The circuit court concluded that: (1) sovereign immunity does not bar Sheri Klein's action based on the settlement agreement reached among Klein, the University of Wisconsin-Stout[1] and the Board of Regents to resolve Klein's Title VII discrimination claim; and (2) the Board of Regents breached the settlement agreement. Because we conclude that sovereign immunity does not bar Klein's action, but that there are material issues of fact about whether the Board of Regents breached the settlement agreement, we affirm in part; reverse in part and remand for further proceedings consistent with this opinion.

## BACKGROUND

¶ 2. Beginning in August of 1993, Sheri Klein served as a member of the UW-Stout Department of Art and Design, where she was on the tenure track. In early 1999, Klein was considered for and denied tenure. As a result, in December of 1999, she filed a Title VII discrimination complaint alleging that tenure had been denied in retaliation for her complaints of sexual harassment by members of the Department of Art and

---

[1] Initially, the University of Wisconsin-Stout was a named party. It was dismissed as part of the circuit court's judgment and that dismissal was not appealed. Therefore, the only defendant is the Board of Regents of the University of Wisconsin System.

Design. The Equal Employment Opportunity Commission (EEOC) facilitated mediation and a settlement agreement[2] was reached.

¶ 3. Under the terms of that agreement, the UW-Stout Department of Art and Design and the UW-Stout Chancellor agreed to forward to the Board of Regents recommendations for tenure at UW-Stout. If the Board granted tenure to Klein, UW-Stout agreed to assign her to "a department at UW-Stout that is appropriate to her training, skills, and abilities." In exchange, Klein relinquished any claims she may have then had, or would have in the future, against the Board or any of its agents, such as UW-Stout.

¶ 4. The bargained-for recommendations for tenure were made and the Board granted Klein tenure at UW-Stout. Klein was assigned to teach in "Stout Solutions," an assignment to which she initially agreed, but later sought to change. Stout Solutions is not a "department" as defined in Wis. Admin. Code § UWS 1.03.[3] However, given Klein's performance as a teacher and her style of interacting with other faculty members, Provost Robert Sedlak averred that it was the assignment that made the most appropriate use of Klein's

---

[2] From the record, we cannot tell whether the settlement agreement was a conciliation agreement reached after an EEOC finding of probable cause, *see EEOC v. Liberty Trucking Company*, 695 F.2d 1038 (7th Cir. 1982), or whether it was a pre-determination agreement reached before an EEOC finding. *See Ruedlinger v. Jarrett*, 106 F.3d 212 (7th Cir. 1997).

[3] Wis. Admin. Code § UWS 1.03 states:

> **Department.** "Department" means a group of faculty members recognized by the faculty and chancellor of the institution, and the board of regents, as dealing with a common field of knowledge or as having a common or closely related disciplinary or interdisciplinary interest.

training, skills and abilities while satisfying UW-Stout's placement obligation under the settlement agreement.

¶ 5. Because UW-Stout refused to reassign Klein, she brought suit under the settlement agreement asserting that her placement in Stout Solutions did not satisfy UW-Stout's obligation to assign her to "a department . . . appropriate to her training, skills, and abilities." Her claim focuses on the word "department" that she contends can mean only an academic department, as defined in WIS. ADMIN. CODE § UWS 1.03.

¶ 6. The Board moved to dismiss Klein's complaint based on sovereign immunity and for failure to state a claim for relief. Klein moved for summary judgment that the Board had breached the settlement agreement. The circuit court interpreted the settlement agreement as part of Klein's Title VII claim and concluded that sovereign immunity did not bar her lawsuit. Initially, the circuit court declined to rule further, believing that it was being asked to make an advisory decision. However, upon Klein's motion for reconsideration, it held that the Board had breached the settlement agreement because Klein had not been assigned to a department as defined in WIS. ADMIN. CODE § UWS 1.03. The Board appeals.

## DISCUSSION

### Standard of Review.

■

¶ 7. The Board appeals the circuit court's denial of its motion to dismiss based on sovereign immunity, which it contends bars Klein's suit for an alleged breach of the settlement agreement. In order to determine whether sovereign immunity bars Klein's lawsuit, we must interpret Title VII, on which her claim is

grounded. Interpretation of Title VII is a question of law that we review without deference to the circuit court's decision. *See Lindas v. Cady*, 150 Wis. 2d 421, 429, 441 N.W.2d 705, 708 (1989).

¶ 8. The Board also appeals the circuit court's decision to grant summary judgment by concluding that the settlement agreement had been breached. This also presents a question of law that we decide *de novo*. *Smith v. Dodgeville Mut. Ins. Co.*, 212 Wis. 2d 226, 232, 568 N.W.2d 31, 34 (Ct. App. 1997).

## Klein's Claim.

¶ 9. To decide the Board's motion to dismiss based on sovereign immunity, we must determine what kind of an action Klein has brought because sovereign immunity is not a defense to all suits against the State. *See, e.g., Lister v. Board of Regents*, 72 Wis. 2d 282, 303, 240 N.W.2d 610, 623 (1976) (sovereign immunity does not bar suits for actions taken outside the bounds of a State agency's constitutional or jurisdictional authority); *German v. DOT*, 2000 WI 62, ¶ 2, 235 Wis. 2d 576, 612 N.W.2d 50 (concluding that the legislature may waive sovereign immunity). The Wisconsin Supreme Court has also held that sovereign immunity does not lie against a claim brought under Title VII. *Lindas*, 150 Wis. 2d at 430, 441 N.W.2d at 709. We therefore begin by examining Title VII, which formed the basis for the circuit court's conclusion that Klein's action in state court was not precluded by sovereign immunity. When we interpret a federal statute, our goal is to determine

the intent of Congress. *Thompson v. Village of Hales Corners*, 115 Wis. 2d 289, 312, 340 N.W.2d 704, 715 (1983).

¶ 10. Klein contends that her state court action is part of her initial Title VII claim and is therefore "brought under" Title VII. Accordingly, we begin by examining the phrase "brought under this title" as used in Title VII. Because the parties argue for differing meanings of that phrase, we must determine whether the phrase is ambiguous. A phrase is ambiguous if it can be understood by reasonably well informed persons in two or more ways. *TDS Realestate Inv. Corp. v. City of Madison*, 151 Wis. 2d 530, 537, 445 N.W.2d 53, 56 (Ct. App. 1989). We conclude the federal statute is ambiguous because it could draw in only the initial Title VII claim, as the Board contends, or it could include other actions that may be necessary to effecting the policy that underlies Title VII, as Klein asserts.

¶ 11. As an initial matter, we note that state and federal courts have concurrent jurisdiction over Title VII claims. *Yellow Freight Sys., Inc. v. Donnelly*, 494 U.S. 820, 821 (1990); *Lindas*, 150 Wis. 2d at 429, 441 N.W.2d at 708. No Wisconsin appellate court has addressed whether an action for breach of a Title VII settlement agreement is a part of the initial Title VII action, but many federal circuit courts have done so. *See, e.g., EEOC v. Liberty Trucking Co.*, 695 F.2d 1038 (7th Cir. 1982) (concluding that although Title VII does not explicitly grant the EEOC authority to enforce conciliation agreements, Congress intended to provide the EEOC such a forum to encourage the voluntary settlement of disputes); *EEOC v. Henry Beck Co.*, 729

F.2d 301 (4th Cir. 1984) (concluding that the EEOC has authority under Title VII to enforce pre-determination agreements); *Ruedlinger v. Jarrett*, 106 F.3d 212 (7th Cir. 1997) (concluding that Title VII private plaintiffs can bring an action in federal court to enforce a pre-determination settlement agreement); *cf. Morris v. City of Hobart*, 39 F.3d 1105 (10th Cir. 1994) (concluding that a claimed breach of a settlement agreement was not an action brought under Title VII).

¶ 12. In deciding whether an action on a settlement agreement is brought under Title VII, the majority of federal appellate courts have concluded that although Title VII does not explicitly provide for enforcement of settlement agreements, Congress must have intended to provide a forum to do so because the underlying policy of Title VII is to consensually resolve disputes and having legally enforceable settlement agreements furthers that policy. *See, e.g., Ruedlinger*, 106 F.3d at 215; *Liberty Trucking*, 695 F.2d at 1044; *Henry Beck*, 729 F.2d at 305.[4]

---

[4] We note that when making this determination, federal courts have interpreted § 706(f)(3) of Title VII, 42 U.S.C. § 2000e-5(f)(3), as a jurisdictional question because as courts of limited jurisdiction, in order to have jurisdiction based on a federal question, an action on a settlement agreement must have been "brought under" Title VII. *See Liberty Trucking*, 695 F.2d at 1040, 1044. Section 706(f)(3) provides in relevant part: "Each United States district court . . . shall have jurisdiction of actions brought under this subchapter." Although Wisconsin courts are courts of general jurisdiction, we must nevertheless determine whether Klein's action on the settlement agreement was a claim "brought under" Title VII because the answer to that question also decides whether the Board's assertion of sovereign immunity will hold.

¶ 13. Although we are bound only by the opinions of the United States Supreme Court on questions of federal law, *Thompson*, 115 Wis. 2d at 307, 340 N.W.2d at 713, we conclude that the reasoning of the Seventh Circuit Court of Appeals in *Ruedlinger* and *Liberty Trucking* is very persuasive. The Seventh Circuit reasoned that because the statutory scheme of Title VII is bottomed on the encouragement of voluntary compliance in the elimination of employment discrimination, enforcement of conciliation and pre-determination settlement agreements must be part of the underlying Title VII actions. We agree and note that to conclude otherwise would undermine the policy of voluntary compliance, that is most often achieved through settlement agreements, and force more cases into court for judicial resolution of the initial Title VII claims. Statutory interpretation that contravenes a purpose of the statute is not favored. *See Liberty Trucking*, 695 F.2d at 1043. Accordingly, we conclude that Klein's action is part of her initial Title VII claim, and as such, sovereign immunity does not lie. *See Lindas*, 150 Wis. 2d at 430, 441 N.W.2d at 709.

**Breach of the Settlement Agreement.**

¶ 14. A Title VII settlement agreement is a voluntary contractual arrangement, containing the terms and conditions agreed to by the employer and the employee,[5] here, the Board of Regents by its agent, UW-Stout, and Klein. Nothing in Title VII compelled either party to enter into the agreement or to choose particular terms.

---

[5] *Liberty Trucking*, 695 F.2d at 1041.

¶ 15. The circuit court granted summary judgment to Klein by concluding that the term "department," used in the settlement agreement, could have only one meaning and that was as set out in WIS. ADMIN. CODE § UWS 1.03. Therefore, because Stout Solutions is not a department under that definition, it concluded that the Board of Regents breached the agreement. On appeal, the Board contends that the affidavits submitted create a dispute of material fact about Klein's placement because the parties did not agree to define department according to § UWS 1.03 and given that Klein's training, skills and abilities must also be factored into her placement, Stout Solutions satisfies the Board's obligations under the agreement. The Board also points out that Klein's letter of May 16, 2000, shows she was in agreement with an assignment to Stout Solutions just eight days after she signed the settlement agreement.

¶ 16. Neither party advises us whether we should use federal or state common law to interpret this Title VII settlement agreement.[6] The United States Supreme Court has not addressed this question, but it has examined the principles used to interpret a consent order, which it described as having attributes of both

---

[6] Some federal circuit courts have concluded that federal, not state, law controls the interpretation of a settlement agreement in a Title VII case. *See Liberty Trucking*, 695 F.2d at 1043 (where the EEOC was a party to the agreement); *Fulgence v. J. Ray McDermott & Co.*, 662 F.2d 1207, 1209 (5th Cir. 1981). While other federal circuit courts have concluded that state contract law should be employed. *See Resnick v. Uccello Immobilien GMBH, Inc.*, 227 F.3d 1347, 1350 (11th Cir. 2000) (federal agency was not a party to the agreement); *Hayes v. National Serv. Indus.*, 196 F.3d 1252, 1253 (11th Cir. 1999).

contracts and judicial decrees.[7] *United States v. ITT Continental Baking Co.*, 420 U.S. 223, 237 (1975). In so doing, it concluded that for enforcement purposes a consent decree or order should be construed as a contract, giving effect to the intent of the parties. *See id.* at 238. To aid construction, the Supreme Court employed federal common law, starting with whether the decree is ambiguous. *See United States v. Atlantic Refining Co.*, 360 U.S. 19, 23 (1959). If the decree is ambiguous, then the Court considers aids that would be used in contract construction such as consideration of the circumstances surrounding the agreement's formation, any technical meaning the words may have had to the parties and any other documents expressly incorporated into the decree. *ITT Continental*, 420 U.S. at 238.

¶ 17. The factors used by the Supreme Court are consistent with what would be applied in interpretation of a contract under Wisconsin law. *See, e.g., Waukesha Concrete Prods. Co. v. Capitol Indem. Corp.*, 127 Wis. 2d 332, 339, 379 N.W.2d 333, 336 (Ct. App. 1985) (concluding that the objective in contract construction is ascertaining the intent of the parties); *Neenah Sanitary Dist. No. 2 v. City of Neenah*, 2002 WI App 155, ¶ 9, 256 Wis. 2d 296, 647 N.W.2d 913 (concluding that contractual language is ambiguous when it is fairly susceptible of more than one construction); *Estate of Grossman*, 250 Wis. 457, 461, 27 N.W.2d 365, 367 (1947) (concluding that the intent of the parties may be determined by the

---

[7] Consent decrees must be approved by the court or administrative agency where the claim has been made. *United States v. ITT Continental Baking Co.*, 420 U.S. 223, 237 (1975). Pre-determination and conciliation agreements do not require court or agency approval, although they may have it. *See Eatmon v. Bristol Steel & Iron Works, Inc.*, 769 F.2d 1503 (11th Cir. 1985); *cf. Liberty Trucking*, 695 F.2d at 1040.

circumstances surrounding the contract's formation); *Farm Credit Servs. v. Wysocki*, 2001 WI 51, ¶ 12, 243 Wis. 2d 305, 627 N.W.2d 444 (concluding that extrinsic evidence may be used in ascertaining the meaning of an ambiguous contract). Accordingly, we conclude that whether we can determine the intent of the parties from the record before us is not dependent upon whether we apply state or federal common law.

¶ 18. Our interpretation begins with deciding whether either the term "department" or the phrase "department . . . appropriate to her training, skills, and abilities" is ambiguous. Whether a contract provision is ambiguous is a question of law that we decide *de novo*. *Neenah Sanitary*, 256 Wis. 2d 296, ¶ 9. We conclude that if we focus on the full phrase "a department . . . appropriate to her training, skills, and abilities," the word "department" is ambiguous because it is modified by those conditions that come later in the phrase. Therefore, we consider extrinsic evidence to attempt to ascertain the intent of the parties. *Farm Credit*, 243 Wis. 2d 305, ¶ 12.

¶ 19. The extrinsic evidence in the record consists of several drafts of the agreement that appear to support the Board's position that Klein would not be assigned to the Department of Art and Design and that the department to which she would be assigned would be one that is appropriate to her training, skills and abilities. However, those same drafts are also supportive of Klein's position that she would be assigned to an academic department. We also note that the affidavit of the Provost of UW-Stout is his interpretation of the contract. Therefore, it may or may not be relevant to

ascertaining the intent of the parties when the agreement was entered into. However, the letter from Klein, written only eight days after she signed the settlement agreement, that acknowledges her understanding that she would be assigned to Stout Solutions, at least initially, also supports the Board's interpretation.

¶ 20. Without knowing more about why the parties drafted the agreement as they did, we cannot determine, as a matter of law, the intent of the parties in regard to Klein's placement at UW-Stout. If we cannot determine what the parties intended Klein's placement to be, we cannot determine whether the settlement agreement has been breached. Therefore, we reverse the summary judgment granted by the circuit court and we remand for further proceedings.

## CONCLUSION

¶ 21. Because we conclude that sovereign immunity does not bar Klein's action, but that there are material issues of fact about whether the Board of Regents breached the settlement agreement, we affirm in part; reverse in part and remand for further proceedings consistent with this opinion.

*By the Court.*—Judgment and order affirmed in part; reversed in part and cause remanded.