PATIENCE DRAKE ROGGENSACK, C.J.
¶ 1 When the Employee Retirement System (ERS) was created for the City of Milwaukee (the City) in 1937, the State granted each employee-member of the ERS the right to vote for the election of three employees to serve on the ERS Annuity and Pension Board (the Board) comprised of seven members. In 1947, the State granted all first class cities the opportunity to manage the ERS pursuant to the exercise of home rule powers. However, the State also protected individual rights of those persons who were members of an ERS because the State precluded amendment or alteration that modified "the annuities, benefits or other rights of any persons who are members of the system prior to the effective date of such amendment." § 31(1), ch. 441, Laws of 1947.
¶ 2 In 1967, the City exercised its home rule over the ERS, consistent with the State's protections of individual member rights. However, in 2013, the City amended its charter ordinance and reduced the voting rights of employees. Each employee-member was permitted to vote for only one employee to serve on the Board, rather than three, and employees could no longer vote for the employees of their choice. The City also gave the mayor three appointments, thereby increasing the size of the Board to eleven members.
¶ 3 Milwaukee Police Association (MPA) members and Milwaukee Professional Fire Fighters Association (MPFFA) members challenged the 2013 amendment, saying that it altered the "other rights" of employee-members of the ERS who were members prior to the amendment in violation of State law.
¶ 4 Upon review, we conclude that the City's 2013 amendment to its charter ordinance that reduced each individual employee-member's right to vote for three employees of his or her choice to serve on the Board, while diluting employees' voice on the Board, modified "other rights" and therefore, is contrary to State law. Accordingly, for the reasons stated more fully below, we reverse the decision of the court of appeals and restore the right of employee-members to vote for three employees of their choice to serve as employee-members of the Board. We also return the Board's size to its size prior to 2013.
I. BACKGROUND
¶ 5 In 1937, the State established the ERS and its administrative powers and *600 responsibilities for cities of the first class. Ch. 396, Laws of 1937. The "administration and responsibility for the proper operation of the retirement system" were "vested" in the Board. Id., § 7(1). The 1937 Law established classifications for Board positions and the right of employees to elect three employees to serve as Board members. Relevant to our discussion of MPA's and MPFFA's challenge, the Law provided:
(2) MEMBERSHIP. The membership of the board shall consist of the following:
(a) Three members to be appointed by the chairman of the common council or other governing body (subject to the confirmation by such common council or other governing body), for a term of three years,
(b) The city comptroller ex-officio,
(c) Three employe[e] members who shall be members of the retirement system and who shall be elected by the members of the retirement system for a term of three years according to such rules and regulations as the board shall adopt to govern such election. The initial terms of the first three members so elected shall expire at the end of one, two and three years, respectively. Following the completion of the initial terms, the terms of the office of such members shall be three years.
§ 7(2), ch. 396, Laws of 1937.
¶ 6 If a vacancy occurred "in the office of a board member," the 1937 Law provided that "the vacancy shall be filled for the unexpired term in the same manner as the office was previously filled." Id., § 7(3). Each Board member had one vote. "Four votes shall be necessary for a decision by the members of the board at any meeting of the board." Id., § 7(5).
¶ 7 The 1937 Law also provided that it is the Board's responsibility to "establish rules and regulations for the administration of the funds created by this act and for the transaction of its business." Id., § 7(6). The Board members were "trustees of the several funds of the system," and given the "full power [and] sole discretion to invest and re-invest." Id., § 9(1).
¶ 8 In 1947, in order to give all first class cities such as Milwaukee "the largest measure of self-government with respect to pension annuity and retirement systems," the State amended its 1937 ERS enactment and granted the City the opportunity to assume responsibility for the ERS, whereby the City could "amend or alter the provisions" of the ERS "in the manner prescribed by section 66.01 of the statutes." § 31(1), ch. 441, Laws of 1947. However, in so doing, the legislation did not give the City carte blanche to amend the ERS as it pleased. Rather, the law explicitly limited the City's power, providing that "no such amendment or alteration [to the ERS] shall modify the annuities, benefits or other rights of any persons who are members of the system prior to the effective date of such amendment or alteration." Id.
¶ 9 In 1967, the City, by charter ordinance, exercised home rule over the ERS. The City adopted the language from § 31(1) of the 1947 Law nearly verbatim. The City's home rule as it appears in its charter ordinance states:
For the purpose of giving to cities of the first class the largest measure of self-government with respect to pension, annuity and retirement systems compatible with the constitution and general law, it is hereby declared to be the legislative policy that all future amendments and alterations to this act are matters of local affair and government and shall not be construed as an enactment of statewide concern. Cities of the first class are hereby empowered to *601 amend or alter the provisions of this act in the manner prescribed by s. 66.0101, Wis. Stats., provided that no such amendment or alteration shall modify the annuities, benefits or other rights of any persons who are members of the system prior to the effective date of such amendment or alteration.
Milw., Wis., Charter Ord. § 36-14 (emphasis added). Following the City exercising its home rule power, the voting rights of ERS members who were employees remained the same as that provided by statute when the ERS was created. That is, employees continued to have the right to vote for three employees to serve as members to the Board. Milw., Wis., Charter Ord. § 36-18-2.
¶ 10 In 1972, the City amended its charter ordinance, changing the composition of the Board. The amendment added a retired employee as a member of the Board, elected by other retired employees. Milw., Wis., Charter Ord. § 36-15-2(d). This change did not limit the voting rights of employee-members, who continued to have the right to elect three employees of their choice to serve as members of the Board. Id.
¶ 11 In 2013, the City again amended its charter ordinance. The 2013 amendment significantly reduced the voting rights of employees to select employees as members of the Board. MPA members were limited to electing only one Board member, and that person had to be a police officer. Milw., Wis., Charter Ord. § 36-15-(2)(c). MPFFA employees voting rights were similarly reduced so that they too could elect only one Board member and they could select only a firefighter. Id. And finally, the City limited the voting rights of all other employee-members of the ERS such that they could vote for only one Board member who could be neither a police officer nor a firefighter. Id.
¶ 12 The 2013 amendment also increased the size of the Board to eleven members. While the chairman of the common council continued to appoint three Board members, pursuant to the amendment, the mayor was given power to appoint three additional Board members. Id., § 36-15-(2)(a-3).
¶ 13 MPA challenged the 2013 changes to the ERS in circuit court, seeking declaratory judgment and a permanent injunction. In so doing, MPA alleged that the 2013 amendment infringed on the rights of police officers to vote for three employees to serve as ERS Board members, and to participate in a Board of similar size to that provided in the State's 1947 delegation to the City. The circuit court allowed MPFFA, who sought the same relief, to intervene.
¶ 14 The City and MPA filed cross-motions for summary judgment, and the circuit court ruled in favor of the City, concluding that the modifications of the ERS were lawful.[1] In its oral ruling, the circuit court concluded that "under the circumstances[,] the other rights provisions of the statute and the charter do not include a specific right to the makeup of the board," and "the city's modification of the makeup of the board does not affect any of the rights of the members." The circuit court did not address the curtailment of individual employee's right to vote to elect three employees to serve as Board members.
¶ 15 On appeal, the court of appeals affirmed the circuit court, relying in large part on Stoker v. Milwaukee Cty., 2014 WI 130, 359 Wis. 2d 347, 857 N.W.2d 102. The court of appeals concluded that there were no vested rights to the size, composition, and manner of election of the Board and *602 that "the City is entitled to amend, on a prospective basis" these matters "because the members of the retirement system do not have any rights in those matters." Milwaukee Police Ass'n, No. 2015AP2375, unpublished slip op., ¶ 21, 2017 WL 1096500 (Wis. Ct. App. Mar. 23, 2017). As with the circuit court, the court of appeals ignored individual employee's right to vote to elect three employees to serve as Board members. The court of appeals did so by shifting the focus of its discussion to the Board's "size, composition, and manner of elections," rather than considering individual employee's statutory right to vote or whether they had a meaningful voice in Board decisions. Id., ¶ 17.
¶ 16 MPA and MPFAA sought review of the court of appeals' decision; we granted review. For the reasons set forth below, we reverse the decision of the court of appeals.
II. DISCUSSION
A. Standard of Review
¶ 17 This case is before us on summary judgment granted to the City. We review summary judgments independently. Grygiel v. Monches Fish & Game Club, Inc., 2010 WI 93, ¶ 12, 328 Wis. 2d 436, 787 N.W.2d 6. Here, summary judgment turns on statutory interpretation that we also address independently, while benefitting from the discussions of the court of appeals and the circuit court. Voces De La Frontera v. Clarke, 2017 WI 16, ¶ 12, 373 Wis. 2d 348, 891 N.W.2d 803.
¶ 18 Furthermore, we independently decide, as a matter of law, whether a matter is primarily of statewide concern, Black v. City of Milwaukee, 2016 WI 47, ¶ 30, 369 Wis. 2d 272, 882 N.W.2d 333.
B. Statute/Ordinance Interaction
¶ 19 Municipal corporations have only those powers that were specifically conferred on them and those that are necessarily implied by the powers conferred. Van Gilder v. City of Madison, 222 Wis. 58, 73, 268 N.W. 108 (1936) ; Butler v. City of Milwaukee, 15 Wis. 546 [493], 550 [497] (1862).
¶ 20 The City, through statutory delegation from the State and its enactment of charter ordinance pursuant to Wis. Stat. § 66.0101 (2015-16),[2] has home rule powers permitted by Article XI, § 3(1) of the Wisconsin Constitution, some of which bear on the ERS.[3] Black, 369 Wis. 2d 272, ¶ 4, 882 N.W.2d 333.
¶ 21 In the case before us, the State permitted the City to exercise home rule over many ERS provisions. Ch. 441, Laws of 1947. The City began to exercise those powers in 1967. However, notwithstanding the City's home rule powers, certain aspects of the ERS continued to be matters of statewide concern. See e.g., Madison Teachers, Inc. v. Walker, 2014 WI 99, ¶ 95, 358 Wis. 2d 1, 851 N.W.2d 337 (concluding that Wis. Stat. § 62.623 (2011-12), which prohibited the City from paying employees' shares of ERS contributions, was a matter of statewide concern and therefore, § 62.623 superseded the City's home rule powers). Furthermore, the delegation of authority to the City in regard to the ERS was specifically limited by the legislature's *603 1947 enactment. The City was given no power to "modify the annuities, benefits or other rights of persons who are members of the system."
1. "Other rights"
¶ 22 The City's management of the ERS arises through legislative delegation as a "matter[ ] of local affair[s] and government." § 31(1), ch. 441, Laws of 1947. Through this delegation, the City was given the power to "amend or alter" the ERS to best suit the needs of the system. However, an important limitation was placed on the City; it was precluded from modifying "the annuities, benefits or other rights of any persons who are members of the system...." Id. (emphasis added).
¶ 23 At oral argument all parties seemed to agree that neither the employees' right to vote for three employees to serve as members of the Board nor the size of the Board comes within "annuities" or "benefits." The City did not contest that employees are "persons who are members of the system."
¶ 24 Where the disagreement lies is with the meaning of "other rights." That disagreement is two-fold: (a) whether each employee-member has the right to vote to elect three employees to serve as Board members, and (b) whether the Board must remain of a similar size to that originally established under the 1947 Law, wherein the State specifically limited the City's management powers over the ERS. We address each contention in turn.
a. Employee voting rights
¶ 25 The ERS was created by the legislature to provide benefits for City employees at their retirement and to pay benefits to the widows and children of deceased employees. Ch. 396, Laws of 1937. The Board was charged with the responsibility to establish rules and regulations for conducting Board business. Id., § 7(6). Board members were "trustees" of the funds they managed, in which the Board had "full power in its sole discretion to invest and re-invest." Id., § 9(1).
¶ 26 In 1937, each employee who was an ERS member was granted voting rights sufficient to elect three employees of his or her choice to become Board members. Id., § 7(2)(c). Those employee voting rights assured that the interests of employees, for whom the ERS was created, would have a meaningful voice in Board decisions. Stated more fully, employee-elected Board members were positioned to have oversight of the ERS so that its funds would not be wasted and employees left without income after years of work.
¶ 27 In 1947, when the State granted the City the opportunity to manage the ERS through enactment of a home rule charter ordinance, the State limited the City's ability to amend or alter the ERS. The State specifically protected employees by providing that the City could not "modify the annuities, benefits or other rights of any persons who are members of the system prior to the effective date of such amendment or alteration." § 31(1), ch. 441, Laws of 1947 (emphasis added).
¶ 28 "Other rights" is not a legislatively defined term. Accordingly, we interpret "other rights" to give meaning to the legislative mandate by which the State limited the City's power to amend or alter the ERS. State ex rel Kalal v. Circuit Court for Dane Cty., 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110.
¶ 29 The purpose of a statute informs our interpretation of statutory terms. McNeil v. Hansen, 2007 WI 56, ¶ 16, 300 Wis. 2d 358, 731 N.W.2d 273 (citing Klein v. Bd. of Regents of Univ. Wis. Sys., 2003 WI App 118, ¶ 13, 265 Wis. 2d 543, 666 N.W.2d 67 (concluding that statutory interpretation that contravenes *604 the purpose of a statute is disfavored) ). If a statute is capable of a reasonable construction that carries out the manifest purpose of the enactment, that construction should be given. Westmas v. Creekside Tree Serv., Inc., 2018 WI 12, ¶ 19, 379 Wis. 2d 471, 907 N.W.2d 68. Statutory terms are interpreted in the context in which they occur, not in isolation. State ex rel Kalal, 271 Wis. 2d 633, ¶ 46, 681 N.W.2d 110. Ejusdem generis [4] is a canon of statutory construction that is sometimes employed to arrive at the meaning of a term from the context in which the term appears. Milwaukee Journal Sentinel v. DOA, 2009 WI 79, ¶ 44, 319 Wis. 2d 439, 768 N.W.2d 700.
¶ 30 That annuities and benefits are rights of employees, is not contested by the City. Furthermore, a plain reading of the statute where annuities and benefits precede "other rights" in the same sentence implies that "other rights" are of the same type, i.e., ERS rights belonging to employees, Auto-Owners Ins. Co. v. City of Appleton, 2017 WI App 62, ¶ 17, 378 Wis. 2d 155, 902 N.W.2d 532, as contrasted with ERS rights belonging to the City.
¶ 31 "Annuity" is a defined term that focuses on financial payments for the welfare of ERS members and their families. § 1(6), ch. 396, Laws of 1937. However, although ch. 441, Laws of 1947 did not define "other rights," the 1947 legislation did explain that the "purpose of safeguarding the stability of pension systems" was an important concern. § 31(2), ch. 441, Laws of 1947. Safeguarding ERS stability is promoted by employee-participation in the Board because it is employees, current and past, for whom stability of the ERS is critical. Preamble to ch. 396, Laws of 1937.
¶ 32 With that clearly stated purpose in mind, the phrase, "other rights" easily encompasses employee voting rights because employee members of the Board are in a unique position to oversee the Board's use of funds and thereby safeguard the financial stability of the ERS. Employees have the most to gain from a financially stable ERS because the ERS directly impacts their financial security upon retirement. In addition, it is employees who will suffer most if ERS funds are lent to a cause that returns a worthless promissory note in exchange for the funds that the Board manages, as has occurred in other states.[5]
¶ 33 And finally, the term, "other rights," occurs in a series of financially related terms, e.g., annuities and benefits that affect employees. It is reasonable to conclude that § 31(1) of the 1947 enactment meant the phrase "or other rights" to include employee ERS rights bearing on financial matters in addition to annuities and benefits. This context assists in interpreting the meaning of "other rights." Milwaukee Journal Sentinel, 319 Wis. 2d 439, ¶ 44, 768 N.W.2d 700.
¶ 34 We conclude that the term, "other rights," includes the right of each individual employee-member of the ERS to vote for three employees of his or her choice to become members of the Board and thereby oversee the continued financial stability of the ERS. Stated otherwise, *605 it was these other financially-related rights of individual employee-members that the State required the City not amend or alter. As we have explained above, the right of each employee to vote to elect three employee members to serve on the ERS Board promotes financial stability for the ERS.
b. Board size
¶ 35 When the Board was established in 1937, it had seven members, three of whom were current City employees, three of whom were political appointees. § 7(2), ch. 396, Laws of 1937. Each Board member had one vote, and a Board decision required four votes. Id., § 7(5). The Board size remained the same in 1947 when the State granted the City the opportunity to assume responsibility for the ERS and in 1967 when the City enacted its charter ordinance, availing itself of that opportunity.
¶ 36 In 1972, the City amended its charter ordinance to increase the Board's size to eight. Milw., Wis., Charter Ord. § 36-15-2(d). A Board position for a retired employee, who was elected by retired employees, was added. Id. This decision did not dilute the employees' opportunity to oversee financial decisions of the Board. Financial stability of the Board was paramount for retired employees too.
¶ 37 In 2013, the City gave the mayor the power to appoint three Board members, thereby increasing the Board size to eleven. Milw., Wis., Charter Ord. § 36-15-2(a-3). Thereafter, six of the eleven Board members were political appointees. This increase in board size with political appointees diluted the employees' ability to have the Board address concerns they may have about ERS's financial stability.
¶ 38 In the matter before us, the Board was given the administrative responsibility for the operation of the ERS. § 7(6), ch. 396, Laws of 1937. For example, the Board was given the responsibility to "establish rules and regulations for the administration of the funds." Id. Board members were denominated, "trustees," of the assets under their care. Id., 9(1). Although this change in the size of the Board did not affect the Board's purpose or its obligations, it did affect the employees' voice in regard to Board decisions. With three appointments made by the chairman of the common council and three appointments made by the mayor, political appointees could control all Board decisions, including those affecting the financial stability of ERS.
¶ 39 We conclude that having a meaningful voice on the Board is among the "other rights" of employees that the City was not free to alter or modify under its home rule authority. Accordingly, we reverse the court of appeals conclusion that increasing the size of the Board to eleven members did not conflict with State law.
2. Statewide concern
¶ 40 We next consider whether promoting financial stability of the ERS is a matter primarily of statewide concern, primarily of local concern or a combination of the two. Madison Teachers, 358 Wis. 2d 1, ¶ 96, 851 N.W.2d 337. When there is a conflict between a home rule ordinance and countervailing state legislation, if the matter is exclusively of statewide concern, the statute controls. Id., ¶ 116 ; see also DeRosso Landfill Co. v. City of Oak Creek, 200 Wis. 2d 642, 647, 547 N.W.2d 770 (1996).
¶ 41 Furthermore, when a law concerns a policy matter primarily of statewide concern, home rule powers are insufficient to permit municipal regulation of the matter.
*606 Madison Teachers, 358 Wis. 2d 1, ¶ 97, 851 N.W.2d 337 (citing Van Gilder, 222 Wis. at 84, 268 N.W. 108 ). If a matter is primarily of local concern, the State nevertheless may regulate the matter so long as the State does so with uniformity. Id., ¶ 99.
¶ 42 It is within the purview of the legislature to enact statutes that regulate for the benefit of public health, safety and welfare. Black, 369 Wis. 2d 272, ¶ 5, 882 N.W.2d 333. Stability of the ERS was a concern of the legislature in 1947 when it created the opportunity for home rule management. § 31(2), ch. 441, Laws of 1947. The financial stability of the ERS affects the welfare of present and past ERS members and their families.
¶ 43 Legislative protection of retirement benefits for employees, as well as for widows and children of deceased employees, is a matter of public welfare, and therefore, primarily of statewide concern. Madison Teachers, 358 Wis. 2d 1, ¶ 97, 851 N.W.2d 337. A financially stable ERS is promoted by the legislature's grant of the right to each employee-member to elect three employees to serve on the Board where their number gives a meaningful voice to employees' concern for financial stability of the ERS. Stated otherwise, through their right to vote to elect employees who will have Board participation with a meaningful voice, employees can assure that present and future financial stability of the ERS remain paramount. Accordingly, the voting rights of individual employees for membership on a Board that does not unduly dilute their participation supports and is intertwined with a matter of statewide concern.
III. CONCLUSION
¶ 44 We conclude that the City's 2013 amendment to its charter ordinance that reduced each individual employee-member's right to vote for three employees of his or her choice to serve on the Board while diluting employees' voice on the Board modified "other rights" and therefore is contrary to State law. Accordingly, we reverse the decision of the court of appeals in this regard and restore the right of employee-members to vote for three employees of their choice to serve as employee-members of the Board. We also return the Board's size to its size prior to 2013.
By the Court. -The decision of the court of appeals is reversed.

The Honorable Timothy G. Dugan of Milwaukee County presided.

All subsequent references to the Wisconsin Statutes are to the 2015-16 version unless otherwise indicated.

Cities and villages organized pursuant to state law may determine their local affairs and government, subject to the Wisconsin Constitution and to such enactments of the legislature of statewide concern as with uniformity shall affect every city or village. The method of such determination shall be prescribed by the legislature. Wis. Const. art. XI, § 3 (1).

Ejusdem generis is "A canon of construction holding that when a general word or phrase follows a list of specifics, the general word or phrase will be interpreted to include only items of the same class as those listed." Ejusdem Generis, Black's Law Dictionary 631 (10th ed. 2014). It literally means "of the same kind." Auto-Owners Ins. Co. v. City of Appleton, 2017 WI App 62, ¶ 17, 378 Wis. 2d 155, 902 N.W.2d 532.

See Illinois Pension Problem: Coming to a State Near You, USA Today, July 12, 2017; Rachel Greszler, How Big Is Your State's Share of $6 Trillion in Unfunded Pension Liabilities?, The Daily Signal, Dec. 20, 2017.