# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE No.: | 2020AP557-OA |

| | |
|---|---|
| COMPLETE TITLE: | Mark Jefferson and the Republican Party of Wisconsin,<br>          Petitioners,<br>     v.<br>Dane County, Wisconsin and Scott McDonell in his official capacity as Dane County Clerk,<br>          Respondents,<br>Disability Rights Wisconsin,<br>          Intervenor-Respondent. |

ORIGINAL ACTION

| | |
|---|---|
| OPINION FILED: | December 14, 2020 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | September 29, 2020 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | |
| COUNTY: | |
| JUDGE: | |

JUSTICES:
ROGGENSACK, C.J., delivered the majority opinion of the Court, in which ZIEGLER, REBECCA GRASSL BRADLEY, and HAGEDORN, JJ., joined, and in which DALLET and KAROFSKY, JJ., joined with respect to Parts II.C. and II.D.1.  ANN WALSH BRADLEY, J., filed an opinion concurring in part, and dissenting in part.  DALLET, J., filed an opinion concurring in part, and dissenting in part, in which KAROFSKY, J., joined.
NOT PARTICIPATING:

ATTORNEYS:


For the petitioners briefs were filed by *Eric M. McLeod, Lane E. Ruhland, Lisa M. Lawless* and *Husch Blackwell LLP*, Madison and Milwaukee.  Oral argument presented by *Eric M. McLeod.*

For the respondents a brief was filed by *David R. Gault, Office of the Dane County Corporation Counsel*, Madison. Oral argument presented by *David R. Gault*.

For the intervenor-respondent, a brief was filed by *Jeffrey A. Mandell*, *Douglas M. Poland, Kurt M. Simatic* and *Stafford Rosenbaum LLP*, Madison. Oral Argument was presented by *Jeffrey A. Mandell*.

An amicus curiae brief was filed on behalf of the Legislature by *Misha Tseytlin*, *Kevin M. Leroy*, and *Troutman Sanders LLP*.

2020 WI 90

NOTICE

This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.

No.   2020AP557-OA

STATE OF WISCONSIN          :          IN SUPREME COURT

**Mark Jefferson and the Republican Party of Wisconsin,**

      **Petitioners,**

    **v.**

**Dane County, Wisconsin and Scott McDonell in his official capacity as Dane County Clerk,**

      **Respondents,**

**Disability Rights Wisconsin,**

      **Intervenor-Respondent.**

**FILED**

**DEC 14, 2020**

Sheila T. Reiff
Clerk of Supreme Court

ROGGENSACK, C.J., delivered the majority opinion of the Court, in which ZIEGLER, REBECCA GRASSL BRADLEY, and HAGEDORN, JJ., joined, and in which DALLET and KAROFSKY, JJ., joined with respect to Parts II.C. and II.D.1.  ANN WALSH BRADLEY, J., filed an opinion concurring in part, and dissenting in part.  DALLET, J., filed an opinion concurring in part, and dissenting in part, in which KAROFSKY, J., joined.

ORIGINAL ACTION.  *Rights declared.*

¶1  PATIENCE  DRAKE  ROGGENSACK,  C.J.  We  review  Mark Jefferson and the Republican Party of Wisconsin's (collectively

"Petitioners") Petition for Original Action that seeks a declaration that (1) Respondents lack the authority to issue an interpretation of Wisconsin's election law allowing all electors in Dane County to obtain an absentee ballot without a photo identification and (2) Governor Evers' Emergency Order #12 ("Emergency Order #12") did not authorize all Wisconsin voters to obtain an absentee ballot without a photo identification.

¶2 To answer these questions, we interpret Wis. Stat. § 6.86(2)(a) (2017-18).[1] In so doing, we conclude § 6.86(2)(a) requires that (1) each individual elector make his or her own determination as to whether the elector is indefinitely confined; (2) an elector's determination may be based only upon age, physical illness or infirmity; and (3) an elector is indefinitely confined for his or her own age, physical illness or infirmity, not those of another person.

¶3 Accordingly, we conclude that the Respondents' interpretation of Wisconsin election laws was erroneous. Additionally, we conclude that Emergency Order #12 did not render all Wisconsin electors "indefinitely confined," thereby obviating the requirement of a valid photo identification to obtain an absentee ballot.

I. BACKGROUND

¶4 On March 25, 2020, and in response to the COVID-19 pandemic and Governor Evers' Emergency Order #12, the Dane County

---

[1] All subsequent references to the Wisconsin Statutes are to the 2017-18 version unless otherwise indicated.

Clerk, Scott McDonell, issued the following statement on his personal Facebook page:

> I have informed Dane County Municipal Clerks that during this emergency and based on the Governors Stay at Home order I am declaring all Dane County voters may indicate as needed that they are indefinitely confined due to illness.  This declaration will make it easier for Dane County voters to participate in this election by mail in these difficult times.  I urge all voters who request a ballot and have trouble presenting a[] valid ID to indicate that they are indefinitely confined.
>
> People are reluctant to check the box that says they are indefinitely confined but this is a pandemic.  This feature in our law is here to help preserve everyone's right to vote.
>
> The process works like this:
>
> • A voter visit's [sic] myvote.wi.gov to request a ballot.
>
> • A voter can select a box that reads "I certify that I am indefinitely confined due to age [,] illness, infirmity or disability and request ballots be sent to me for every election until I am no longer confined or fail to return a ballot.["]
>
> • The voter is then able to skip the step of uploading an ID in order to receive a ballot for the April 7 election.
>
> Voters are confined due to the COVID-19 illness.  When the Stay at Home order by the Governor is lifted, the voter can change their designation back by contacting their clerk or updating their information in myvote.wi.gov.
>
> Voters who are able to provide a copy of their ID should do so and not indicate that they are indefinitely confined.

¶5  The Milwaukee County Clerk issued a nearly identical declaration on Facebook later that same day.  The Milwaukee County

3

Clerk "urge[d] all voters who request a ballot and do not have the ability or equipment to upload a valid ID to indicate that they are indefinitely confined." The county clerks circulated these statements to their municipal clerks.

¶6 Responding to the confusion that these two statements caused, the Wisconsin Elections Commission ("WEC") issued proposed guidance on when voters may declare themselves indefinitely confined. The WEC's proposed guidance, issued on March 27, 2020, reads as follows:

1. Designation of indefinitely confined status is for each individual voter to make based upon their current circumstance. It does not require permanent or total inability to travel outside of the residence. The designation is appropriate for electors who are indefinitely confined because of age, physical illness or infirmity or are disabled for an indefinite period.

2. Indefinitely confined status shall not be used by electors simply as a means to avoid the photo ID requirement without regard to whether they are indefinitely confined because of age, physical illness, infirmity or disability.

¶7 McDonell went to Facebook again to express that he was "[g]rateful that the Wisconsin Election Commission voted to agree with me that the designation of indefinitely confined status is for each individual voter to make based upon their current circumstances. . . ." Later that night, McDonell posted the following:

More from me on this topic. The Wisconsin Election Commission met on Friday and issued further guidance to clarify the purpose and proper use of the indefinitely confined status under Wis[.] Stat[]. [§] 6.86(2) as follows:

4

1. Designation of indefinitely confined status is for each individual voter to make based upon their current circumstances. It does not require permanent or total inability to travel outside of the residence. The designation is appropriate for electors who are indefinitely confined because of age, physical illness or infirmity or are disabled for an indefinite period of time.

2. Indefinitely confined status shall not be used by electors simply as a means to avoid the photo ID requirement without regard to whether they are indefinitely confined because of age, physical illness, infirmity, or disability.

Voters should follow this guidance when determining whether they qualify to claim that they are indefinitely confined as a result of the COVID-19 pandemic and declared public health emergency.

¶8 Petitioners filed this Original Action on March 27, 2020, seeking declarations that (1) the Respondents' interpretation of Wisconsin's election laws was erroneous and (2) Emergency Order #12 did not render all Wisconsinites indefinitely confined such that they could obtain an absentee ballot without presenting a photo ID. Petitioners also sought a preliminary injunction directing McDonell to remove his posts and to issue a statement correcting his erroneous interpretation.

¶9 On March 31, 2020, we granted the Petitioners' request for preliminary injunctive relief. In that Order, we concluded "that clarification of the purpose and proper use of the indefinitely confined status pursuant to Wis. Stat. § 6.86(2)[a] . . . [is] warranted." Additionally, we noted that "the WEC's guidance . . . provides the clarification on the purpose and proper use of the indefinitely confined status that is required at this time." Further, we ordered "McDonell to refrain

5

from posting advice as the County Clerk for Dane County [inconsistent with] the . . . WEC guidance." We granted the Petition for Original Action and assumed jurisdiction over this case the following day.

¶10 While this case was pending, the April 7, 2020 election occurred and Wisconsin saw an increase in absentee ballots cast by electors who had claimed to be indefinitely confined. WEC records show that there were 194,544 such absentee ballots cast by voters in the 2020 Spring Election.[2] In contrast, the 2016 Spring Election saw 55,334 voters who obtained absentee ballots by claiming to be indefinitely confined.

¶11 After we accepted review, the Respondents filed a document that "stipulate[d] that the two propositions, as stated by the Petitioners are an accurate statement of the law." Disability Rights Wisconsin ("DRW") intervened later.

## II. DISCUSSION

¶12 We review this case under our original jurisdiction found in Article VII, Section 3(2) of the Wisconsin Constitution. Within our original jurisdiction, we have granted declaratory judgment when "a judgment by the court significantly affects the

---

[2] The WEC's statistics for the April 7, 2020 Election are available at https://elections.wi.gov/sites/elections.wi.gov/files/2020-05/WEC%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%20PowerPoint%20Presentation.pdf (hereinafter, WEC Statistics). We may take judicial notice of these statistics because we determine the WEC's post-election report is a source whose accuracy cannot be reasonably questioned. See Wis. Stat. § 902.01(2); see also Sisson v. Hansen Storage Co., 2008 WI App 111, ¶¶10-11, 313 Wis. 2d 411, 756 N.W.2d 667 (stating that "appellate court[s] may take judicial notice when . . . appropriate").

6

community at large." Wisconsin Pro. Police Ass'n, Inc. v. Lightbourn, 2001 WI 59, ¶4, 243 Wis. 2d 512, 627 N.W.2d 807.

### A. Standard of Review

¶13 The interpretation and the application of Wis. Stat. § 6.86 present questions of law that we review independently. Dawson v. Town of Jackson, 2011 WI 77, ¶17, 336 Wis. 2d 318, 801 N.W.2d 316. Although the WEC has issued official guidance, we interpret § 6.86(2)(a) without deference to the agency's interpretation. See Lamar Cent. Outdoor, LLC v. Div. of Hearings & Appeals, 2019 WI 109, ¶9, 389 Wis. 2d 486, 936 N.W.2d 573 (citing Tetra Tech EC, Inc. v. DOR, 2018 WI 75, ¶108, 382 Wis. 2d 496, 914 N.W.2d 21).

### B. Mootness

¶14 Respondents contend that their stipulation on questions of law makes the issues presented herein moot. However, we are not bound by stipulations on questions of law. State v. Olson, 127 Wis. 2d 412, 419, 380 N.W.2d 375 (Ct. App. 1985) (citing Swift & Co. v. Hocking Valley Ry. Co., 243 U.S. 281, 289 (1917)). Rather, we decide the legal issue at the heart of this controversy, i.e., the interpretation and application of Wis. Stat. § 6.86(2)(a) in the context presented.

¶15 Respondents also contend that the issue presented is moot because the clerk corrected his erroneous advice, the election occurred and Executive Order #12 has expired. However, even in cases where an issue is moot, we may nevertheless reach the merits of the dispute. We may do so when "(1) the issue is of great

public importance; (2) the situation occurs so frequently that a definitive decision is necessary to guide circuit courts; (3) the issue is likely to arise again and a decision of the court would alleviate uncertainty; or (4) the issue will likely be repeated, but evades appellate review because the appellate review process cannot be completed or even undertaken in time to have a practical effect on the parties." In re John Doe Proceeding, 2003 WI 30, ¶19, 260 Wis. 2d 653, 660 N.W.2d 260; see Fine v. Elections Bd., 95 Wis. 2d 162, 166, 289 N.W.2d 823 (1980). Also, challenges to the constitutionality of a statute may cause the court to reach the merits of the contention. Portage Cnty. v. J.W.K., 2019 WI 54, ¶29, 386 Wis. 2d 672, 927 N.W.2d 509. Without correction, the erroneous interpretation and application of Wis. Stat. § 6.86(2)(a), which affect matters of great public importance, are capable of repetition. See Mueller v. Jensen, 63 Wis. 2d 362, 366-67, 217 N.W.2d 277 (1974). Accordingly, we choose to address the issues presented.

## C. Election Statutes

¶16 Before turning to the interpretation of Wis. Stat. § 6.86(2)(a) we provide a brief overview of Wisconsin's absentee ballot laws. Chapter 6 of the Wisconsin Statutes governs "the electors" and the processes by which Wisconsinites cast their ballots. Voting is a constitutional right, the exercise of which is "strongly encouraged." Wis. Stat. § 6.84(1). However, "voting by absentee ballot is a privilege exercised wholly outside the traditional safeguards of the polling place." Id. As such,

8

"matters relating to the absentee ballot process . . . shall be . . . mandatory."  Wis. Stat. § 6.84(2).  We have held that where an election statute is mandatory, its exercise requires strict compliance.  See State ex rel. Ahlgrimm v. State Elections Bd., 82 Wis. 2d 585, 597, 263 N.W.2d 152 (1978).  Consequently, "[b]allots counted in contravention of the procedures . . . may not be included in the certified result of any election." § 6.84(2).

¶17  Ordinarily, when an elector chooses to vote by absentee ballot, the elector must comply with the procedure set forth in Wis. Stat. § 6.86(1).  In most circumstances, the requirements to obtain an absentee ballot are twofold: (1) apply[3] with the elector's municipal clerk and (2) provide a photo proof of identification with the application.  See Wis. Stat. §§ 6.86(1)(a), (ac); see also Wis. Stat. § 6.87(1), and Wis. Stat. § 5.02(6m).  After an elector has completed this process once and has not changed his or her name or address since providing proof of identification, the elector need not continuously provide proof of identification for each election in which the elector votes absentee.  § 6.87(4)(b)3.

---

[3] WEC's form, "Application for Absentee Ballot," provides electors with three options for receipt of an absentee ballot. Electors may receive ballots (1) for a specific election; (2) for all elections in a calendar year; or (3) automatically for all elections, as an indefinitely confined voter.  The application is clear that the third option is "[f]or indefinitely-confined voters only" and that making "false statements in order to obtain an absentee ballot" is punishable by a fine of not more than $1,000, not more than six-months imprisonment or both.

¶18   Wisconsin Stat. § 6.86(2)(a) has different criteria.  It provides:

> An elector who is indefinitely confined because of age, physical illness or infirmity or is disabled for an indefinite period may by signing a statement to that effect require that an absentee ballot be sent to the elector automatically for every election.  The application form and instructions shall be prescribed by the commission, and furnished upon request to any elector by each municipality.  The envelope containing the absentee ballot shall be clearly marked as not forwardable.  If any elector is no longer indefinitely confined, the elector shall so notify the municipal clerk.

As set out above, there are two classes of electors who can request an absentee ballot pursuant to the provisions of § 6.86(2)(a):  (1) an elector who is indefinitely confined or (2) an elector who is disabled for an indefinite period.

¶19   If an elector qualifies to receive an absentee ballot under either classification, the elector is not required to provide photo identification to obtain that ballot.  Wis. Stat. § 6.87(4)(b)2.  Rather, the elector may "submit with his or her absentee ballot a statement signed by the same individual who witnesses voting of the ballot which contains the name and address of the elector and verifies that the name and address are correct." § 6.87(4)(b)2.

¶20   In addition, when an elector qualifies to receive an absentee ballot because he or she is indefinitely confined or disabled for an indefinite period, the elector automatically receives an absentee ballot for every election until the elector notifies the municipal clerk that he or she is no longer

10

indefinitely confined, fails to cast and return a ballot, or the clerk receives reliable information that the "elector no longer qualifies for the service." Wis. Stat. §§ 6.86(2)(a), (b).[4]

### D. Indefinitely Confined

¶21 The crux of the issue before us is when may an elector obtain a ballot as indefinitely confined pursuant to Wis. Stat. § 6.86(2)(a), rather than by way of the usual absentee ballot process set out in § 6.86(1). The purpose of statutory interpretation and application is to apply the meaning of the words the legislature chose. State ex rel. Kalal v. Circuit Court for Dane Cnty., 2004 WI 58, ¶44, 271 Wis. 2d 633, 681 N.W.2d 110. "Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." Kalal, 271 Wis. 2d 633, ¶45. If the language chosen is clear and unambiguous, we stop the inquiry and apply the plain meaning of those words. Id., ¶¶45, 46. Important to the meaning of a statute is the context in which it occurs, and we interpret statutes to reasonably give effect to every word. Id., ¶46.

¶22 We conclude, as we explain below, that based on the plain language of Wis. Stat. § 6.86(2)(a): (1) declaring oneself

---

[4] Because an elector who qualifies to receive an initial absentee ballot as indefinitely confined receives an absentee ballot without providing photo identification, and because such an elector continues to receive absentee ballots for each subsequent election until the clerk changes the elector's status, such an elector may vote in many elections without ever providing photo identification.

11

indefinitely confined or disabled for an indefinite period is an individual determination that only an individual elector can make; (2) an elector is indefinitely confined for purposes of § 6.86(2)(a) for only the enumerated reasons therein; and (3) an elector is indefinitely confined due to his or her own age, physical illness, or infirmity, not the age, physical illness, or infirmity of another person.

### 1.   Individual Determination

¶23  The plain language of Wis. Stat. § 6.86(2)(a) requires that each elector make an individual assessment to determine whether he or she qualifies as indefinitely confined or disabled for an indefinite period.  A county clerk may not "declare" that any elector is indefinitely confined due to a pandemic.  This conclusion is supported by two distinct, but equally important, reasons.

¶24  First, as a fundamental matter, county clerks are not to interpret Wisconsin's election laws and make declarations based on those interpretations.  It is the WEC that is responsible for guidance in the administration and enforcement of Wisconsin's election laws, not the county clerks.  See generally Wis. Stat. § 5.05.  County clerks have different responsibilities such as (1) providing election supplies and ballots, (2) preparing ballots, (3) adhering to the election time schedule, (4) resolving doubts that relate to election notices, (5) certifying candidates for municipal judges, (6) assisting the WEC in conducting the WEC's voter education, (7) maintaining toll-free telephone lines to

exchange voting information, (8) training election officials, and (9) reporting information to the WEC. Wis. Stat. §§ 7.10(1)-(10). Nowhere in these duties did the legislature include disseminating information based on the clerk's interpretation of absentee voting laws.[5]

¶25 Next, as we stated above, whether to declare oneself indefinitely confined is an individual determination. The plain language of the statute does not permit persons other than the elector to make that decision. We will not add words into a statute that the legislature did not see fit to employ. See Dawson, 336 Wis. 2d 318, ¶42 (citing County of Dane v. LIRC, 2009 WI 9, ¶33, 315 Wis. 2d 293, 759 N.W.2d 571). Therefore, neither county clerks nor an order of the Governor may declare persons indefinitely confined.

¶26 The remainder of Wis. Stat. § 6.86(2)(a) supports this interpretation. For example, para. (2)(a) requires the elector to inform the municipal clerk if the elector is no longer indefinitely confined. If county clerks were permitted to declare all electors within their county indefinitely confined due to COVID-19 and Emergency Order #12, they would confuse when individual electors are to follow § 6.86(2)(a)'s mandate that the elector notify the

---

[5] This structure is part of Wisconsin's decentralized election system. The legislature has delegated to the WEC the responsibilities of, among others, administering, enforcing and promulgating rules relating to the election laws. At the local level, the legislature gave county clerks the responsibility of ensuring that municipal clerks have the supplies and information necessary to operate elections.

clerk that he or she is no longer indefinitely confined. Furthermore, if individual electors did not follow the statutory mandate and continued to vote as indefinitely confined, despite no longer meeting the statutory requirements, they would cast their votes contrary to the statute. In turn, because compliance with the absentee ballot process is mandatory, their ballots would not count. Wis. Stat. §§ 6.84(1), (2).

¶27 Accordingly, we conclude that whether an elector qualifies as indefinitely confined is a determination that individual electors make, not third parties.

## 2. Indefinite Confinement

¶28 Having concluded that it is the individual elector who decides whether that elector is indefinitely confined or disabled for an indefinite period, we now turn to the statutory criteria that may result in indefinite confinement pursuant to Wis. Stat. § 6.86(2)(a).

¶29 An elector is eligible to obtain an absentee ballot under Wis. Stat. § 6.86(2)(a) if that elector is "indefinitely confined because of age, physical illness or infirmity." The statute enumerates three reasons sufficient to constitute indefinite confinement. When the legislature explicitly includes certain conditions in meeting a statutory standard, we may presume that the legislature purposefully excluded others. FAS, LLC v. Town of Bass Lake, 2007 WI 73, ¶27, 301 Wis. 2d 321, 733 N.W.2d 287 ("Under the doctrine of expressio unius est exclusio alterius, 'the express mention of one matter excludes other similar matters [that are]

14

not included.'") (quoting <u>Perra v. Menomonee Mut. Ins. Co.</u>, 2000 WI App 215, ¶12, 239 Wis. 2d 26, 619 N.W.2d 123) (alteration in original).

¶30  It is not necessary to define each enumerated category of indefinite confinement in the context of this case. Nonetheless, we conclude that both the contention that electors qualify as indefinitely confined solely as the result of the COVID-19 pandemic and the declared public health emergency and the contention that Wis. Stat. § 6.86(2)(a) could be used for those who "have trouble presenting a valid ID" are erroneous because those reasons do not come within the statutory criteria.

¶31  First, the presence of a communicable disease such as COVID-19, in and of itself, does not entitle all electors in Wisconsin to obtain an absentee ballot under Wis. Stat. § 6.86(2)(a).  Similarly, an emergency order that required all Wisconsinites to remain in their homes except for limited circumstances, standing alone, was not a condition based on age, a physical illness, or an infirmity.  Finally, having trouble uploading or providing proof of a photo identification does not permit electors to avoid both the absentee voting laws and the voter identification laws.

¶32  For these reasons, we conclude that in order to take advantage of Wis. Stat. § 6.86(2)(a)'s photo identification bypass and secure repetitive absentee ballot receipts, an elector must strictly comply with § 6.86(2)(a)'s requirements.

3.  Age, Physical Illness, or Infirmity

15

¶33 Finally, we determine to whom the statutory conditions apply.  The Petitioners assert that the conditions apply only to individual electors.  Conversely, DRW contends that when an elector is caring for someone who is indefinitely confined because of age, physical illness or infirmity, the caretaker is indefinitely confined for those reasons as well.  We conclude that the plain reading of Wis. Stat. § 6.86(2)(a) requires that the elector is the person who must be indefinitely confined because of the elector's own age, physical illness or infirmity.

¶34 As discussed above, we agree with DRW that it is for each elector individually to decide whether to employ Wis. Stat. § 6.86(2)(a).  However, we do not agree that electors may make that decision based on someone else's age, physical illness or infirmity.  DRW accuses the Petitioners of violating a basic canon of statutory interpretation by reading into the statute language that the legislature did not employ.[6]

¶35 DRW's interpretation would have us read the statute as: "An elector who is indefinitely confined because of [the elector's or another's] age, physical illness or infirmity . . . ."  The underlined portion in the previous sentence does not exist, and as we already explained, we will not add words the legislature did not employ.  Dawson, 336 Wis. 2d

---

[6] Specifically, DRW contends that the Petitioners are impermissibly reading "his or her own" into the statute.  DRW argues that this is a limitation that the legislature did not intend.  As we discuss below, we do not see this as a limitation but rather the reasonable reading of the statute based on its plain language.

16

318, ¶42. Just as one cannot declare another indefinitely confined, one cannot be indefinitely confined because of the conditions of another.

¶36 To support its argument, DRW asserts that by adding "because of age, physical illness or infirmity" to the statute, the legislature expanded "indefinitely confined" beyond conditions that affect an individual elector. However, in the same breath, DRW argues that "or is disabled for an indefinite period" is limited to the elector as it does not contain a "because of" modifier. This construction of the statute is untenable and leads to a disjointed result; we decline to read the statute in such a way. Kalal, 271 Wis. 2d 633, ¶46.

¶37 Rather, we see these prerequisites as two sides of the same coin. Wisconsin Stat. § 6.86(2)(a) applies to "[a]n elector who is indefinitely confined because of age, physical illness or infirmity, or is disabled for an indefinite period . . . ." Each applies to conditions that an elector may experience but under different circumstances. An elector may be indefinitely confined because of age, physical illness or infirmity and not necessarily be disabled for an indefinite period of time. The converse is also true: an elector may be temporarily disabled for an indefinite period of time and need not be elderly, physically ill, or infirm. Either way, the conditions apply to the individual elector himself or herself, not to a third party caregiver.

¶38 Based on the foregoing, we conclude that the plain meaning of Wis. Stat. § 6.86(2)(a) applies both indefinite

17

confinement and disability for an indefinite period to the elector who seeks to obtain an absentee ballot under § 6.86(2)(a).

### III. CONCLUSION

¶39 We conclude Wis. Stat. § 6.86(2)(a) requires that (1) each individual elector make his or her own determination as to whether the elector is indefinitely confined; (2) an elector's determination may be based only upon age, physical illness or infirmity; and (3) an elector is indefinitely confined for his or her own age, physical illness or infirmity, not those of another person.

¶40 Accordingly, we conclude that the Respondents' interpretation of Wisconsin's election laws is erroneous. Additionally, we conclude that Emergency Order #12 did not render all Wisconsin electors "indefinitely confined," thereby obviating the requirement of a valid photo identification to obtain an absentee ballot.

*By the Court.*—Rights declared.

¶41 ANN WALSH BRADLEY, J. *(concurring in part, dissenting in part).* I agree with the majority that the determination of whether electors are indefinitely confined is to be made by the electors themselves. See majority op., ¶2. I further agree that Emergency Order #12,[1] the "safer at home" order, did not render all Wisconsin electors indefinitely confined for purposes of Wis. Stat. § 6.86(2)(a).[2] Id., ¶3. However, I likewise agree with Justice Dallet's separate writing that the majority should have stopped there.

¶42 The majority, instead, ventures farther. It alters Wis. Stat. § 6.86(2)(a) by inserting its own words into the statutory text chosen by the legislature. Such a technique allows the majority to arrive at an unnecessary and erroneous blanket determination that "an elector is indefinitely confined for his or her own age, physical illness or infirmity, not those of another person." Id., ¶2.

¶43 Such a determination is not supported by the plain language of Wis. Stat. § 6.86(2)(a). Further, for some, it may imperil their fundamental right to vote.

---

[1] Emergency Order #12, issued on March 24, 2020, by Department of Health Services Secretary-designee Andrea Palm, ordered among other things, "'[a]ll individuals present within the State of Wisconsin . . . to stay at home or at their place of residence' with certain delineated exceptions." Wisconsin Legislature v. Palm, 2020 WI 42, ¶6, 391 Wis. 2d 497, 942 N.W.2d 900.

[2] Dane County acknowledges that Emergency Order #12 did not render all Wisconsin electors indefinitely confined.

1

¶44 Accordingly, I respectfully concur in part and dissent in part.

¶45 Wisconsin Stat. § 6.86(2)(a) provides in relevant part: "An elector who is indefinitely confined because of age, physical illness or infirmity or is disabled for an indefinite period may by signing a statement to that effect require that an absentee ballot be sent to the elector automatically for every election."[3]

¶46 In the majority's view, an elector may not claim indefinitely confined status "based on someone else's age, physical illness or infirmity." Majority op., ¶34. The majority opinion criticizes the proffered contrary interpretation of Disability Rights Wisconsin (DRW) because it "would have us read the statute as: 'An elector who is indefinitely confined because of [the elector's or another's] age, physical illness or infirmity . . . .'" Id., ¶35.

¶47 But an examination of the statute in question leads to the conclusion that it is the majority, and not DRW, that impermissibly inserts words into the statute. To explain, the statute by its own terms applies to "[a]n elector who is indefinitely confined because of age, physical illness or infirmity . . . ." Wis. Stat. § 6.86(2)(a). It does not say whose age, physical illness, or infirmity is the trigger. Indeed, there

_____

[3] An elector who receives an absentee ballot in this manner, and who has not previously provided proof of identification with an absentee ballot request, "may, in lieu of providing proof of identification, submit with his or her absentee ballot a statement signed by the same individual who witnesses voting of the ballot which contains the name and address of the elector and verifies that the name and address are correct." Wis. Stat. § 6.87(4)(b)2. & 3.

2

is no modifier to "age, physical illness or infirmity" in the statute.

¶48 In the absence of such a modifier, the majority reads in "his or her own age, physical illness or infirmity." This interpretation violates our precedent that indicates this court "will not read into the statute a limitation the plain language does not evidence." State v. Kozel, 2017 WI 3, ¶39, 373 Wis. 2d 1, 889 N.W.2d 423; see State ex rel. Kalal v. Cir. Ct. for Dane Cnty., 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110.

¶49 Accordingly, the text of the statute does not preclude a person from designating "indefinitely confined" under the circumstances due to the "age, physical illness or infirmity" of another in their household. In addition to being consistent with the plain statutory language, which provides no limitation, such a conclusion is consistent with common sense and responsible public health practices in the midst of a global pandemic.

¶50 As an example, consider an elderly couple who live in a rural area where internet service is sparse,[4] and who do not possess the necessary technology to make a copy of their photo identification to apply for an absentee ballot. Both may be self-quarantining due to the particular vulnerability of one with a

---

[4] As of earlier this year, around 486,000 Wisconsin residents, or "roughly 28 percent of the state's rural population," lacked broadband access. Shamane Mills, "Demand For Broadband Internet Remains High In Rural Wisconsin," Wisconsin Public Radio (Feb. 12, 2020), https://www.wpr.org/demand-broadband-internet-remains-high-rural-wisconsin; see Lori S. Kornblum & Daniel Pollack, Out of Luck: Need a Rural Family Law Attorney?, 92 Wis. Law. 34, 40 (Sept. 2019) ("Wisconsin and many other states have areas where internet service is not easily available.").

3

health condition that poses a distinct risk for dire consequences should a partner contract COVID-19. Under the majority's formulation, the healthy partner must make what for some amounts to an impossible choice——leave the house to vote in person or make a copy of a photo identification, thereby risking exposure to COVID-19, or forgo participation in our democracy. The fear of contracting COVID-19 is real and the risk, for some, of contracting the virus is simply too daunting.

¶51 To force such a Hobson's choice[5] is inconsistent with our understanding of the right to vote as a "sacred right of the highest character." League of Women Voters of Wis. Educ. Network, Inc. v. Walker, 2014 WI 97, ¶72, 357 Wis. 2d 360, 851 N.W.2d 302 (Abrahamson, C.J., dissenting) (citing State v. Phelps, 144 Wis. 1, 15, 128 N.W. 1041 (1910)).

¶52 Even if the majority's interpretation of Wis. Stat. § 6.86(2)(a) is reasonable, and the statute is susceptible to two reasonable interpretations, I adopt the interpretation more respectful of the sacred character and fundamental nature of the right to vote. See Reynolds v. Sims, 377 U.S. 533, 562 (1964) (citing Yick v. Hopkins, 118 U.S. 356, 370 (1886)) (referring to voting as a "fundamental political right . . . preservative of all rights"). The ability to exercise the fundamental right to vote should not be imperiled by a loved one's frail health, and it

---

[5] "A 'Hobson's choice' is 'an apparent freedom of choice when there is no real alternative,' such as being put in the position of having to accept 'one of two or more equally objectionable things.'" McNally v. Capital Cartage, Inc., 2018 WI 46, ¶70 n.3, 381 Wis. 2d 349, 912 N.W.2d 35 (Ziegler, J., dissenting) (citation omitted).

4

should not be contingent on one's access to the necessary technology to make a photocopy of a photo identification.

¶53  For the foregoing reasons, I respectfully concur in part and dissent in part.

¶54 REBECCA FRANK DALLET, J. (*concurring in part, dissenting in part*).  I join the majority opinion to the extent that it confirms our March 31, 2020 unpublished order, in which we explained that electors were not automatically confined or disabled under Wis. Stat. § 6.86(2) solely because of Emergency Order #12 or the mere presence of COVID-19.  The majority reiterates that position, correctly stating that each elector must make her own determination as to whether she is indefinitely confined or disabled.  Majority op., ¶¶25-27.  If the majority opinion stopped there, I would join it in its entirety.  Since it goes further, I join it only in part.[1]

¶55 We decide cases on the "facts in front of us," not hypothetical ones.  State v. Steffes, 2013 WI 53, ¶27, 347 Wis. 2d 683, 832 N.W.2d 101.  Deciding cases on hypothetical facts leads to impermissible advisory opinions, about which our position has been steadfast:  "[w]e will not do that."  E.g., O'Bright v. Lynch, No. 2020AP1761-OA, unpublished order (Wis. Oct. 29, 2020) (Roggensack, C.J., concurring); Milwaukee Police Ass'n v. City of Milwaukee, 2018 WI 86, ¶128, 383 Wis. 2d 247, 914 N.W.2d 597 (Abrahamson, J., dissenting); Smith v. Pershing, 10 Wis. 2d 352, 357, 102 N.W.2d 765 (1960).

¶56 Yet the majority's speculation as to what conditions might render future voters indefinitely confined or disabled results in just such an advisory opinion.  We have before us no

---

[1] I join Parts II.C. and II.D.1. of the majority opinion.

1

facts regarding any elector's determination under Wis. Stat. § 6.86(2). Indeed, Jefferson does not allege that <u>even one</u> elector <u>actually requested or obtained</u> an absentee ballot based on McDonell's erroneous advice. That factual deficiency is not cured by the majority's reaching outside the record to note an increase in the number of electors who requested an absentee ballot because they determined they were indefinitely confined or disabled. To begin with, the increase in absentee-ballot requests is provided without any context, such as the fact that electors in the 2020 Spring Election faced the once-in-a-generation challenge of voting in the midst of a deadly pandemic. But more to the point, the number of absentee-ballot requests based on indefinite confinement or disability tells us nothing about how we should interpret § 6.86(2) because that number does not tell us why any voter determined she was indefinitely confined.

¶57 Without those facts, the majority opinion's interpretation of § 6.86(2) rests on hypothetical voters who are indefinitely confined for hypothetical reasons. That is not how we decide cases. See <u>Tammi v. Porsche Cars N. Am., Inc.</u>, 2009 WI 83, ¶3, 320 Wis. 2d 45, 768 N.W.2d 783 (refusing to address a "hypothetical situation"). I therefore concur in part, joining the majority in its conclusion that individual electors must make their own determination as to whether they are indefinitely confined or disabled under Wis. Stat. § 6.86(2). I would go no further.

¶58. I am authorized to state that Justice JILL J. KAROFSKY joins this opinion.

2