COURT OF APPEALS
DECISION
DATED AND FILED

October 5, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP1319**

STATE OF WISCONSIN

Cir. Ct. Nos. **2018CV1274**
**2018CV6612**

IN COURT OF APPEALS
DISTRICT I

MILWAUKEE POLICE SUPERVISORS ORGANIZATION, JOHN CWIKLINSKI, CHERYL FERRILL, KIMBERLEE FOSTER, DALE GRUDZINA, APRIL HOFFMAN, JOEL KUJAWA, CHRISTOPHER LEHNER, WILLIAM MCKEOWN, JASON MUCHA, BRENDA NOGALSKI, TONY SNOW, ALBERT CARL SUNN, JR., WILLIAM WELTER, MARK ZAREMBA AND JOE FARINA,

   PLAINTIFFS-RESPONDENTS,

MILWAUKEE PROFESSIONAL FIREFIGHTERS' ASSOCIATION LOCAL 215,

   INTERVENOR-RESPONDENT,

   V.

CITY OF MILWAUKEE AND MILWAUKEE EMPLOYEES' RETIREMENT SYSTEM,

   DEFENDANTS-APPELLANTS.

APPEAL from an order of the circuit court for Milwaukee County: JEFFREY A. CONEN, Judge. *Affirmed in part; reversed in part and cause remanded with directions*.

Before Donald, P.J., Dugan and White, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. The City of Milwaukee and the Milwaukee Employees' Retirement System (MERS) appeal the order granting summary judgment to the Milwaukee Police Supervisors Organization (MPSO) and the Milwaukee Professional Firefighters' Association Local 215 (Local 215) on the issue of the proper calculation of Duty Disability Retirement (DDR) benefits under their respective collective bargaining agreements (CBAs). We agree with the circuit court's conclusion that the MPSO agreement did not require contribution into the pension plan in order to receive the pension offset payment, and, therefore, we affirm the court's order as to MPSO. However, we conclude that Local 215's agreement required members to contribute into the pension plan in order to receive the pension offset payment; and therefore, we reverse this part of the circuit court order, and remand with directions to grant summary judgment to the City and MERS on this issue.

## BACKGROUND

¶2 By statute and the Milwaukee City Charter, MERS administers the retirement system for the City of Milwaukee for eligible members, which includes

most employees and certain elected officials. MILWAUKEE, WIS., CODE § 36-01 to -03; WIS. STAT. § 40.30 (2019-20);[1] *see also Milwaukee Police Ass'n v. City of Milwaukee*, 2018 WI 86, ¶5, 383 Wis. 2d 247, 914 N.W.2d 597. Members in active service for the Milwaukee Police Department (MPD) and the Milwaukee Fire Department (MFD) are generally eligible to accrue retirement benefits through MERS, subject to the terms of their employment and any applicable CBA. § 36-03. Upon reaching a specified minimum age, an employee in active service is eligible for a pension retirement benefit based upon their years of creditable service. § 36-05-01.

¶3 Relevant here, the "rates of pay, hours of work, and conditions of employment" for MPD members represented by the MPSO and MFD members represented by Local 215 are set forth in their respective CBAs. The "base salary" for members is governed by an article within the applicable CBA, which contains salary grids that reflect members' experience and education, with "pay steps" that provide pay increases for members who remain within the same position for more than one year.

¶4 Additionally, MERS also administers DDR benefits for eligible members. "[A]ny member in active service who shall become permanently and totally incapacitated for duty as the natural and proximate result of an injury occurring at some definite time and place while in the actual performance of duty shall" be eligible for DDR benefits. MILWAUKEE, WIS., CODE § 36-05-3-a. DDR

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

benefits are calculated as a percentage "of the current annual salary for such position which [the member] held at the time of such injury." § 36-05-3-c-1-a.

¶5     Under the terms of both the 2015-16 MPSO CBA and the 2013-16 Local 215 CBA, members hired before October 3, 2011, were required to "contribute 7% of their earnable compensation" toward the member contribution for their pension beginning at pay periods specified in the individual agreement. *See* MILWAUKEE, WIS., CODE § 36-08-7-b.  Further, both CBAs provided that members hired before October 3, 2011, would received a 5.8% wage increase labeled a "pension offset" in its CBA.  The term "pension offset" was not defined in either CBA.

¶6     When the MPSO CBA took effect in December 2016, all MPSO DDR beneficiaries received a 5.8% wage increase in their DDR benefit payments based on their current annual salary as calculated by MERS using the base salary grids.  In March 2017, MPSO DDR beneficiaries hired before October 3, 2011, were notified that their benefits would be reduced by the removal of the 5.8% wage increase from their current annual salaries.  Further, MERS took action to recoup the portion of DDR benefits already paid to MPSO DDR beneficiaries attributable to the 5.8% wage increase.

¶7     Affected members of the MPSO receiving DDR benefits and the MPSO filed an action against the City and MERS seeking declaratory judgment and injunctive relief.  Because the City and MERS had taken the position that DDR beneficiaries were not entitled to the 5.8% wage increase, MERS did not calculate a wage increase for DDR beneficiaries belonging to other public safety unions.  Therefore, Local 215 members who were hired before October 3, 2011, and received DDR benefits, were never given the 5.8% wage increase.  Eligible

MFD members and Local 215 brought an action against the City and MERS alleging breach of contract, violation of the ordinance, and sought declaratory judgment and injunctive relief. The cases were consolidated shortly after Local 215's action was filed.

¶8      The MPSO, Local 215, and the City[2] each moved for summary judgment. The circuit court granted MPSO and Local 215's motions for summary judgment, concluding that the 5.8% wage increase was not predicated on the payment of the 7% pension contribution in either CBA. The City appeals. Additional facts are included below, as necessary.

## DISCUSSION

¶9      The City argues that the circuit court erred when it denied its motion for summary judgment. "We review a grant of summary judgment de novo, relying on the same methodology as the circuit court." *Estate of Sustache v. American Fam. Mut. Ins. Co.*, 2008 WI 87, ¶17, 311 Wis. 2d 548, 751 N.W.2d 845. It is proper for the circuit court to grant summary judgment where "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2). The parties stipulated to the facts before the circuit court decided their respective motions for summary judgment. Therefore, without an issue of disputed facts, our question is which party or parties are entitled to judgment as a matter of law.

---

[2] For ease of reading, we refer to the defendant-appellant, which is comprised of the City and MERS, as the City throughout the remainder of this decision.

¶10     The City argues that the 5.8% wage increase is a pension offset available only to those members who make a corresponding 7% contribution to the pension fund.  DDR beneficiaries may not contribute to the pension fund pursuant to ordinance.  *See* MILWAUKEE, WIS., CODE § 36-02.[3]  The City contends that because DDR benefits recipients may not contribute to the pension plan, the pension offset wage increase is not applicable to them.  The MPSO and Local 215 disagree.  Because the contract language is not the same in each CBA, we must consider them separately, although we will employ the same canons of constructions to interpret each CBA.  The "[i]nterpretation of a collective bargaining agreement, as with other contracts, presents a question of law that we review independently[.]"  ***Roth v. City of Glendale***, 2000 WI 100, ¶15, 237 Wis. 2d 173, 614 N.W.2d 467.  "In interpreting a contract, the objective is to ascertain the intent of the contracting parties." ***Id.***

¶11     "We construe contracts as they are written."  ***State ex rel. Massman v. City of Prescott***, 2020 WI App 3, ¶14, 390 Wis. 2d 378, 938 N.W.2d 602.  "Where the terms of a contract are clear and unambiguous, we construe the contract according to its literal terms" under the plain and ordinary meaning, consistent with what a reasonable person would understand the words to mean. ***Tufail v. Midwest Hosp., LLC***, 2013 WI 62, ¶¶26, 28, 348 Wis. 2d 631, 833 N.W.2d 586.  We avoid construing the language of the contract to render any portion "'meaningless, inexplicable or mere surplusage.'" ***Kasten v. Doral Dental***

---

[3] Under the definitions for the Milwaukee City Charter Chapter 36 on MERS, a beneficiary is a "person in receipt of a retirement allowance, or other benefit…" and a member is "any person included in the membership of the retirement system…."  MILWAUKEE, WIS., CODE § 36-02-5, 21.  Relevant here, membership is available to eligible employees who are "full-time," or part-time and who are "eligible for membership under rules and regulations adopted by the board," or to "[e]lected officials who have evidenced their intention to join the system."  § 36-03.

*USA, LLC*, 2007 WI 76, ¶48, 301 Wis. 2d 598, 733 N.W.2d 300 (citation omitted). Only if the language is ambiguous do we consider extrinsic evidence to determine the contracting parties' intent. *Massman*, 390 Wis. 2d 378, ¶14.

¶12 We start with the common ordinance that governs DDR benefits for members under both CBAs, MILWAUKEE, WIS., CODE chapter 36 on MERS. We focus on this clause of the ordinance, noting that this dispute only affects members employed before October 3, 2011:

> Except as otherwise provided … any fireman or policeman who shall become disabled as the direct result of injury incurred in the performance of one or more specific acts of duty shall have a right to receive duty disability benefit during the period of such disability of an amount equal to 75% of the current annual salary for such position which he held at the time of such injury.

Section 36-05-3-c-1-a.[4] "The rules for statutory interpretation apply to our interpretation of an ordinance." *Stoker v. Milwaukee Cnty.*, 2014 WI 130, ¶17, 359 Wis. 2d 347, 857 N.W.2d 102. Those rules are the same as explained for contract interpretation. *See State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶¶45-46, 271 Wis. 2d 633, 681 N.W.2d 110.

¶13 It is undisputed that DDR benefits are calculated from "the current annual salary for such position which [she or] he held at the time of" the duty-related injury. MILWAUKEE, WIS., CODE § 36-05-3-c-1-a. The term "current annual salary" is not defined in either the ordinance or the CBAs. The City argues that "current annual salary" is a function of the calculation of base salary in the

---

[4] There is other language in the ordinances that allows for 90% of current annual salary as wage replacement; however, for purposes of this appeal it is sufficient to state that DDR beneficiaries receive a percentage of their current annual salary as wage replacement.

CBAs, Article 9 in the MPSO CBA and Article 10 in the Local 215 CBA. MPSO and Local 215 argue that the salary grid in the respective article of each CBA is the "current annual salary" for the purposes of calculating DDR benefits. Further, they assert that because the 5.8% wage increase is included in the salary grid, then the DDR benefits must be calculated based on that figure. We conclude that the City's position accurately interprets the contract; however, that does not resolve the application of the 5.8% wage increase to DDR beneficiaries. Because of the differing contract language, we will consider each contract separately.

*The MPSO CBA*

¶14     We begin with the MPSO contract. In the MPSO CBA, the 5.8% wage increase is referenced in two sections of the salary grids.

> 1. For Employees hired prior to October 3, 2011:
>
> ….
>
> c. Commencing Pay Period 1, 2016 (December 20, 2015), the biweekly base salary paid to employees shall be as follows:*
>
> ….
>
> * Effective Pay Period 1, 2016 (December 20, 2016), employees hired prior to October 3, 2011 shall receive a 5.8% Pension Offset.

The MPSO argues that the language in its CBA plainly states that the 5.8% wage increase is applicable to all employees hired before October 3, 2011, without qualification or condition. The MPSO contends that because there is no qualifying language, DDR benefits recipients must also be given the 5.8% wage increase. We agree.

¶15 In our examination of the MPSO CBA, the 5.8% wage increase is included in the Article 9 salary grid commencing December 20, 2015, for employees hired before October 3, 2011, and that increase is built into the employee's base salary for the next phase of the wage increase, commencing December 20, 2016. Employees hired after October 3, 2011, have a different salary grid. Under the pension benefits of the CBA, Article 15, paragraph four states, that "[e]ffective Pay Period 1, 2016, employees enrolled in the Employees' Retirement System as [] 'policemen' prior to October 3, 2011, shall contribute 7% of their earnable compensation toward the member contribution for their pension." Although this corresponds with the receipt of the pension offset payment, there is nothing in the contract itself that conditions the receipt of the 5.8% wage increase—which is then incorporated into the base salary going forward—upon making the 7% pension contribution or that failure to make the pension contribution bars a member from receiving the 5.8% wage increase.

¶16 In its plain language, the CBA entitles employees who were hired before October 3, 2011, to receive a 5.8% wage increase pension offset. Although the 5.8% wage increase is incorporated in the salary grid, it is the language of the contract in Article 9 that determines that the base salary includes this increased wage, and thus, it applies to the current annual salary for DDR beneficiaries. We do not consider the language of the contract ambiguous and do not turn to extrinsic aids. Under such an interpretation, our inquiry stops.

¶17 The City argues that giving the 5.8% wage increase without conditioning its receipt upon the pension contribution would lead to an absurd result under the contract, with DDR beneficiaries being placed in a better position than currently working members. This argument is logically flawed because members on DDR receive 75% or 90% of their current annual salary. The City

argues that a comparable non-disabled member would receive the 5.8% increase, but then make a 7% contribution to the pension plan, which the City argues means that they have a 1.2% lower annual salary than the salary upon which DDR beneficiaries' payments are based. This argument fails because the DDR beneficiaries are still only receiving a percentage in wage replacement; further, the members' pension payments are an investment in their future retirement benefit.

¶18    The City argues that the 5.8% wage increase must be construed in the context of the entire CBA. It argues that the term "pension offset" would have no meaning if its receipt were not conditioned upon the pension contribution. However, the contract as written does not require any different interpretation than we have applied as its plain language. We conclude that as a matter of law, the MPSO is entitled to summary judgment on its claim, and we affirm the circuit court.

*The Local 215 CBA*

¶19    When we consider the firefighters CBA, we reach a different conclusion. Unlike the MPSO contract, the Local 215 contract conditions the 5.8% wage increase for employees hired before October 3, 2011, upon payment of the pension contribution. We recite the relevant language:

> Commencing Pay Period 1, 2015, employees hired prior to October 3, 2011 who make the member contribution in accordance with the provisions of Article 23 of this Agreement shall receive a 2.9% pension offset payment. The pension offset payment to the employee will continue to be made as long as the employee makes the member contribution. If the employee does not make the member contribution, the 2.9% pension offset payment will no longer be paid to the employee. The pension offset payment made to such eligible employee shall be base building and pensionable.
>
> ….

10

> Commencing Pay Period 1, 2016, employees hired prior to October 3, 2011 who make the member contribution in accordance with the provisions of Article 23 of this Agreement shall receive an additional 2.9% pension offset payment. The pension offset payment to the employee will continue to be made as long as the employee makes the member contribution. If the employee does not make the member contribution, the 5.8% pension offset (2015 offset and 2016 offset) payment will no longer be paid to the employee. The pension offset payment made to such eligible employee shall be base building and pensionable.

¶20 The plain language of these contract provisions provides that employees hired before October 3, 2011, will receive the pension offset wage increases if they make a pension contribution. As stated above, pursuant to ordinance, retired beneficiaries and DDR beneficiaries may not contribute to the pension plan. Therefore, DDR beneficiaries are not entitled to receive the pension offset wage increase to their base salary. Our role is to interpret and apply the clear language of the CBA, not to assess the wisdom of the choice of language or issues extrinsic to the contract. *See Milwaukee Dist. Council 48 v. Milwaukee Cnty.*, 2019 WI 24, ¶18, 385 Wis. 2d 748, 924 N.W.2d 153.

¶21 Local 215 contends that under the terms of the CBA, the City is prohibited from diminishing pension benefits; therefore, DDR beneficiaries must be given the 5.8% wage increase. Local 215 goes so far as to ask this court to estop the City from diminishing pension benefits for DDR beneficiaries. This argument is unavailing. When the 2013-2016 CBA was agreed upon, there was no change to the method by which MERS calculated DDR benefits—namely to determine a recipient's "current annual salary" by looking to Article 10 on base salary. Local 215 contends that the past practice has been to use the salary grid to determine a DDR beneficiary's "current annual salary." Nevertheless, there is no

11

language in the CBA or the ordinance that requires the DDR "current annual salary" to equal the salary grid.[5]

¶22     Although the method did not change, the contract language to determine Local 215 members' base salary did change. Article 10 sets forth not only the salary grids for various service positions and levels, but the methods of determining or affecting issues including pay steps, pay schedules, recruitment, classifications, and promotions, as well as describing the conditions precedent to receive the pension offset wage increase. Under the express terms of the contract, the calculation of "current annual salary" for DDR beneficiaries has changed, in accordance with the plain language of the contract. Local 215 argues that extrinsic evidence supports its view that the parties did not intend to affect DDR benefits; however, we do not analyze the extrinsic evidence and we do not consider it dispositive to this issue because we conclude that the language of the contract is not ambiguous.

¶23     Local 215 also argues that because the 5.8% wage increase was labeled base-building and pensionable, it is included in the base salary from which DDR benefits are calculated. However, the language of the contract limits the base-building and pensionable status of the wage increase to members eligible for the wage increase. We conclude there is no conflict to excluding DDR beneficiaries from receiving the 5.8% wage increase.

---

[5] Local 215 relies on deposition testimony that the past practice of determining "current annual salary" for DDR benefits was a "ministerial" function of entering the information from the CBA salary grids. This description does not change our interpretation. The contract language requires more accounting mathematics on the part of MERS, but that action is not discretionary and does not intrude upon the ministerial nature of the calculation and proper distribution of benefits.

**CONCLUSION**

¶24    Our conclusions are based on the language of each contract.  First, pursuant to the MPSO contract, there is no qualifying language on the receipt of the 5.8% wage increase.  Therefore, we affirm the circuit court's granting summary judgment in favor of the MPSO.  However, the Local 215 contract clearly requires a member to make the 7% pension contribution to receive the 5.8% wage increase and requires that a member stop receiving the wage increase in the event the pension contribution is not made.  Therefore, we reverse the summary judgment granted in Local 215's favor, and remand with instructions to the circuit court to grant summary judgment to the City.

*By the Court.*—Order affirmed in part; order reversed in part and cause remanded with directions.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5.